**UNITED STATES of America**

v.

**Terry D. DIXON, John A. Fletcher,**

**Terry D. Dixon, Appellant.**

**UNITED STATES of America**

v.

**Terry D. DIXON, John A. Fletcher,**

**John A. Fletcher, Appellant.**

**Nos. 92–3124, 92–3127.**

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit Rule 12(6) Sept. 23, 1992.

Decided Dec. 30, 1992.

Melvin L. Vatz, Grossinger, Gordon & Vatz, Pittsburgh, PA, for appellant Terry D. Dixon.

Thomas S. White, Federal Public Defender, Karen Sirianni Gerlach, Asst. Federal Public Defender, Pittsburgh, PA, for appellant John A. Fletcher.

Paul J. Brysh, Office of U.S. Atty., Pittsburgh, PA, and Thomas W. Corbett, Jr., U.S. Atty., Daniel E. Fromstein, Victor D. Stone, Crim. Div., U.S. Dept. of Justice, Washington, DC, for appellee.

Present: HUTCHINSON and ALITO, Circuit Judges, FULLAM, District Judge.[*]

## OPINION OF THE COURT

HUTCHINSON, Circuit Judge.

Appellants, Terry D. Dixon (Dixon) and John A. Fletcher (Fletcher) appeal final judgments of conviction entered against them in a criminal case by the United States District Court for the Western District of Pennsylvania. They were convicted after a jury found them guilty of conspiracy to rob a federally insured bank in violation of 18 U.S.C.A. § 371 (West 1966) and bank robbery in violation of 18 U.S.C.A. § 2113(a) (West Supp.1992) and 18 U.S.C.A. § 2 (West 1969). On appeal, they raise many issues. Only the sentencing issue Dixon raises requires discussion. The oth-

---

[*] Hon. John P. Fullam, District Judge of the United States District Court for the Eastern District of Pennsylvania, sitting by designation.

er issues they raise lack merit and are summarily rejected.[1] In seeking resentencing, Dixon asserts that the district court erred in enhancing his sentence for brandishing, possessing or displaying a dangerous weapon under the United States Sentencing Guidelines (Guidelines).[2] We reject Dixon's sentencing argument for the reasons that follow and hold that the district court properly increased his base offense level by three because his co-conspirator, Stephanie Fletcher, though she did not, in fact, possess any weapon, brandished what appeared to be a gun during the commission of the robbery.

## I.

On August 15, 1991, a federal grand jury sitting in the Western District of Pennsylvania returned a two count indictment charging Dixon and Fletcher with one count of conspiracy to rob a federally insured bank in violation of 18 U.S.C.A. § 371 (Count One), and one count of bank robbery in violation of 18 U.S.C.A. §§ 2 and 2113(a) (Count Two). On December 6, 1991, following a joint jury trial, Dixon and Fletcher were convicted on both counts.

On February 26, 1992, the district court increased Dixon's base offense level by three for brandishing, possessing or displaying a dangerous weapon, attributing to Dixon the actions of his co-conspirator, Stephanie Fletcher, who pretended she had a gun in her hand beneath a concealing towel. As a result of this and several other enhancements under the Guidelines, the district court sentenced Dixon to one hundred twenty-five months of imprisonment,

three years of supervised release, and $100.00 in special assessments. On March 5, 1992, the district court sentenced Fletcher to concurrent sentences of sixty months of imprisonment on Count One and two hundred thirteen months of imprisonment on Count Two, three years of supervised release and a $100.00 special assessment.

Dixon filed a timely notice of appeal from his judgments of conviction and sentence on March 5, 1992. Fletcher filed a timely notice of appeal on March 10, 1992. Their appeals were consolidated on April 30, 1992.

## II.

On June 27, 1991, a robbery occurred at a federally insured bank in McKeesport, Pennsylvania. Two individuals entered the bank, ordered the tellers to empty the cash drawers and fled with the contents. On July 11, 1991, the police placed a surveillance photograph of one of the alleged perpetrators in a local newspaper. It had been taken during the course of the robbery by a video monitor installed in the bank. The person in the photograph was identified as Stephanie Fletcher. The FBI obtained a warrant for her arrest and took her into custody on July 16, 1991.

In the course of FBI interrogation, Stephanie Fletcher named her half-brother, John Fletcher, and Dixon as participants in the robbery. Both Dixon and John Fletcher were later apprehended and Stephanie Fletcher cooperated in their prosecutions. According to Stephanie's testimony, Dixon masterminded the robbery and instructed John and her on how it could be accom-

---

**1.** We list here these other issues. The following are raised by both Dixon and Fletcher: the district court erred in quashing a subpoena directed to Pretrial Services for records relating to co-conspirator Stephanie Fletcher, a key government witness, and in refusing to grant defense counsel access to her file; and the district court erred in refusing to provide defense counsel with Stephanie Fletcher's presentence investigation report. Dixon separately contends that the district court erred in refusing to instruct the jury that it could consider Stephanie Fletcher's criminal conduct not resulting in convictions when assessing her credibility. Fletcher separately contends that: the district court erred in refusing to grant him a mistrial after Stephanie

Fletcher testified that she and Fletcher had been incarcerated together, thereby violating his due process rights; the district court erred in refusing to grant a mistrial because Fletcher's Fifth Amendment rights were violated when a special agent with the FBI testified regarding Fletcher's decision to remain silent during custodial interrogation; and the government committed prosecutorial misconduct by stating in its closing argument that for justice to be done, the jury had to return a guilty verdict.

**2.** Fletcher does not raise this issue on his appeal.

plished. Dixon also provided the clothes to be worn during the robbery. On the day of the robbery, Dixon, in accordance with his plan, dropped Stephanie and John Fletcher off at the bank and parked one block away with the get-away car. When Stephanie Fletcher entered the bank, she was unarmed, but she had draped a towel over her hand to create an appearance that she had a gun. The bank employees testified they believed that Fletcher had a gun concealed beneath the towel.

While both robbers shouted obscenities and barked orders at the bank employees, Stephanie Fletcher pointed menacingly at them with the towel draped hand the employees believed concealed a gun. During the robbery, the Fletchers manhandled one of the bank tellers against a metal file cabinet. The teller suffered a cut on her arm. None of the bank employees were able to identify the robbers, but they had been able to activate the surveillance camera that took the damning photograph. After committing the robbery, Stephanie and John Fletcher fled in Dixon's waiting car.

At sentencing, the district court held that Stephanie Fletcher had "brandished" a "dangerous weapon" during the robbery within the meaning of the Guidelines, although it acknowledged that she held no object other than the towel covering her hand. It also held Dixon accountable for the acts of his co-conspirator pursuant to section 1B1.3(a)(1) of the Guidelines, increased the base offense level for robbery by three levels pursuant to section 2B3.1(b)(2)(C) of the Guidelines,[3] and sentenced Dixon to one hundred twenty-five months of imprisonment, three years of supervised release, and $100.00 in special assessments.

### III.

The district court had subject matter jurisdiction over this case pursuant to 18 U.S.C.A. § 3231 (West 1985). We have appellate jurisdiction over Dixon's convictions and the district court's judgments of sentence pursuant to 28 U.S.C.A. § 1291 (West Supp.1992).

Dixon first contends that the actions of Stephanie Fletcher cannot properly be attributed to him under section 1B1.3(a)(1) of the Guidelines. Even if her conduct could be attributed to him, he also contends that the district court could not increase his base offense level by three for brandishing a dangerous weapon pursuant to section 2B3.1(b)(2)(C) of the Guidelines because she had nothing in her hand underneath the towel.

On review, a district court's findings of fact underlying an upward adjustment in a Guidelines sentence can be set aside only if they are clearly erroneous. *See United States v. Inigo*, 925 F.2d 641, 658–59 (3d Cir.1991). The question whether Stephanie Fletcher possessed an object that constitutes a "dangerous weapon" involves construction of both that phrase and the term "object" in Guideline section 2B3.1(b)(2)(C). To that extent, it presents a legal issue subject to plenary review. *United States v. Frierson*, 945 F.2d 650, 653 (3d Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 1515, 117 L.Ed.2d 651 (1992). The question whether Dixon is accountable for Stephanie Fletcher's conduct is likewise a question of law subject to plenary review. *United States v. Collado*, 975 F.2d 985, 990 (3d Cir.1992).

### IV.

Guideline section 1B1.3(a)(1) states that adjustments in the base offense level should be determined based upon "all acts and omissions committed or aided and abetted by the defendant, or for which the defendant would be otherwise accountable, that occurred during the commission of the offense of conviction...." United States

---

**3.** The district court used the 1990 Guidelines and the 1990 commentary in construing the material Guideline sections because it concluded that the use of note 3 in the 1991 commentary to section 4A1.2 would cause an *ex post facto* problem. On appeal, both parties have assumed that use of the 1990 version is correct. We will accept that assumption and apply the 1990 Guidelines and their accompanying commentary without reaching or deciding the *ex post facto* issue.

Sentencing Commission, *Guidelines Manual*, § 1B1.3(a)(1) (Nov.1990). All acts of the perpetrator of a crime in the course of its commission are attributed to an aider or abettor, and acts of a conspirator are attributed to his co-conspirators if they are done in furtherance of the conspiracy and reasonably foreseeable. Application Note 1 to section 1B1.3 provides in relevant part:

> In the case of criminal activity undertaken in concert with others, whether or not charged as a conspiracy, the conduct for which the defendant "would be otherwise accountable" also includes conduct of others in furtherance of the execution of the jointly-undertaken criminal activity that was reasonably foreseeable by the defendant.

*Id.* § 1B1.3, comment. (n. 1). In *United States v. Collado,* a drug distribution conspiracy case, we looked to the note 1 commentary quoted above and held, under section 1B1.3(a), that the district court, before attributing a criminal actor's conduct to an accomplice, must determine that the actions: (1) were in furtherance of the jointly-undertaken activity; (2) were within the scope of the defendant's agreement; and (3) were reasonably foreseeable in connection with the activity the defendant agreed to undertake. *Collado,* 975 F.2d at 991–92, 995 (citing U.S.S.G. § 1B1.3, comment. (n. 1)). Some cases have also held that an express finding is required when evidence concerning the circumstances of a crime permit a district court to infer that a defendant should have reasonably foreseen possession of a firearm by an accomplice or co-conspirator. *See United States v. Aguilera–Zapata,* 901 F.2d 1209, 1215–16 (5th Cir.1990). *But see United States v. Soto,* 959 F.2d 1181, 1187 (2d Cir.1992) (defendant could have reasonably foreseen firearms would be possessed in connection with drug activities because firearm was common paraphernalia for drug traffickers). Here, as in *Soto,* we think a remand is unnecessary because the record shows that Dixon had a duty to anticipate or foresee that a bank robbery in broad daylight would require some credible threat of deadly force. Standard foreseeability analysis does not require Dixon to foresee the

precise means the perpetrators he aided would use in making the threat of harm credible enough to overcome the victim's willingness to resist. Under the circumstances of this case, Stephanie Fletcher's threatening acts in perpetrating this robbery were attributable to Dixon as a matter of law and a remand for an express finding on its presence would be futile. His responsibility for Stephanie Fletcher's act of feigning possession of a gun flows directly from the facts of this case and the commentary to the Guidelines. Illustration b to application note 1 of section 1B1.3 provides:

> Defendant C, the getaway driver in an armed bank robbery in which $15,000 is taken and a teller is injured, is convicted of the substance count of bank robbery. Defendant C is accountable for the money taken because he aided and abetted the taking of the money. He is accountable for the injury inflicted because he participated in concerted criminal conduct that he could reasonably foresee might result in the infliction of injury.

U.S.S.G. § 1B1.3, comment. (n. 1), illus. b. Stephanie Fletcher's conduct in pretending to brandish a gun was both in furtherance of the robbery and reasonably foreseeable by Dixon. Her act of pretending to have a gun facilitated commission of the bank robbery, and Dixon planned and masterminded that robbery. He gave explicit and detailed instructions to Stephanie and John Fletcher concerning its commission, he waited in the get-away car he had provided and he also provided all of the clothes and paraphernalia Stephanie and John used during the robbery. Considering Dixon's experience with offenses of this nature, as shown by his criminal history enhancement, and the characteristics of a robbery by force, in the old style, *vi et armis,* lead us to the conclusion that Fletcher's act was attributable to Dixon as a matter of law.

Since Dixon was the wheelman and planner of the robbery, not only was he bound to foresee Stephanie's threat of intimidation, but the district court could also have reasonably inferred he was the one who suggested the means to instill fear

into the bank employees that Stephanie Fletcher later employed. The district court did not err in deciding Dixon was accountable for Stephanie Fletcher's act of threatening the bank employees with what they believed was a gun.

■ After determining that Stephanie Fletcher's conduct in feigning possession of a firearm was attributable to Dixon, the district court applied section 2B3.1(b)(2)(C) of the Guidelines to increase Dixon's base offense level by three points, as that section requires, "if a dangerous weapon was brandished, displayed or possessed" during the course of a robbery. U.S.S.G. § 2B3.1(b)(2)(C). Dixon's main attack on this three-level increase is based on the contention that Guideline section 2B3.1(b)(2)(C) does not apply because Stephanie Fletcher had nothing beneath the towel except her hand and that a hand is not an "object" within the meaning of the commentary to the Guideline equating an object that has the appearance of a dangerous weapon with a real one. Therefore, we must decide whether Stephanie Fletcher did "brandish, display or possess" an "object" that could be taken as a "dangerous weapon" within the meaning of section 2B3.1 of the Guidelines.

It is undisputed that Stephanie Fletcher had no object in her hand other than a towel. The bank employees merely testified that they believed the towel concealed a gun. Stephanie Fletcher, however, stated at trial that she acted with the intent of creating that belief. Based on these facts, the district court concluded that Stephanie Fletcher's successful attempt to put the employees in fear of being shot if they resisted justified an increase of three in Dixon's base offense level under section 2B3.1(b)(2)(C).

The 1990 version of section 2B3.1(b)(2)(C) provides:

§ 2B3.1. *Robbery*
  (a) Base Offense Level: 20
  (b) Specific Offense Characteristics
      *    *    *    *    *    *
  (2)(C) if a dangerous weapon (including a firearm) was brandished, dis-

played, or possessed, increase by 3 levels . . . .

U.S.S.G. § 2B3.1. The Sentencing Commission's commentary to this section states "[w]hen an *object that appeared to be a dangerous weapon was brandished*, displayed, or possessed, *treat the object as a dangerous weapon* for the purposes of subsection (b)(2)(C)." *Id.* § 2B3.1, comment. (n. 2) (emphasis added). In addition, application note 1 to section 2B3.1 incorporates the commentary to section 1B1.1 which defines the terms "brandished" and "dangerous weapon" as follows:

  (c) "Brandished" with reference to a dangerous weapon (including a firearm) means that the weapon was pointed or waved about, or displayed in a threatening manner.
  (d) "Dangerous weapon" means an instrument capable of inflicting death or serious bodily injury. When an *object that appeared to be a dangerous weapon was brandished*, displayed, or possessed, *treat the object as a dangerous weapon*.

*Id.* § 1B1.1, comment. (n. 1(c), (d)) (emphasis added). Although Guideline section 2B3.1(b)(2)(C), on its face, refers only to "weapons" that are dangerous, the commentary in note 2 expressly requires sentencing courts to impose the section's three-level increase whenever an object that merely appears to be a dangerous weapon is brandished, displayed or possessed. In short, the Commission equates the image of a "dangerous weapon" with its reality for purposes of sentence enhancement.

■ The Sentencing Commission also tells "courts [to] treat the commentary much like legislative history." *Id.* § 1B1.7, commentary; *see also United States v. Ofchinick*, 877 F.2d 251, 256–57 (3d Cir. 1989). Courts use the "commentary" to the Guidelines as an aid in interpreting them. Courts also look to the commentaries to explain how the Guidelines should be applied. Thus, when the text of a Guideline is unclear, we must look to the Commission's comments as an aid to construction. *See United States v. Bierley*,

922 F.2d 1061, 1066 (3d Cir.1990); *United States v. Williams*, 917 F.2d 112, 114 (3d Cir.1990), *cert. denied,* — U.S. ——, 111 S.Ct. 1001, 112 L.Ed.2d 1084 (1991).

In the Sentencing Reform Act of 1984, Congress gave the Sentencing Commission broad discretion to create Guidelines and interpret them. *See* 28 U.S.C.A. § 994 (West Supp.1992). Congress passed the Act in order to reduce sentencing disparity and to create a uniform sentencing procedure throughout the nation in place of the old law that had left the severity of sentences, within statutory limits, to the unreviewable discretion of individual judges. *Id.* § 991(b). We therefore believe the Commission's commentary is controlling on the construction of the Guideline phrase "dangerous weapon" unless it contradicts the Guideline text. Therefore, courts routinely defer to the Commission's commentaries interpreting a Guideline's text unless the text plainly contradicts that interpretation. *See United States v. White*, 888 F.2d 490, 497 (7th Cir.1989); *Ofchinick*, 877 F.2d at 256–57.

Dixon asserts, however, that the three-level increase he suffered is not supported by the text, the comment or any case law. He says Guideline section 2B3.1(b)(2)(C) has been applied to increase the offense level only where the perpetrator brandished, displayed or possessed some "object" resembling a weapon such as an unloaded gun, an inoperable gun, a toy gun, a pellet gun, or a road flare. Because Stephanie Fletcher did not possess any "object" other than the towel concealing her hand, Dixon asserts that she could not possibly have "brandished, displayed, or possessed" an "object that appeared to be a dangerous weapon." Dixon's argument is unavailing. Stephanie Fletcher's hand is an object. Concealed by the towel and pointed around the bank, it fooled the bank tellers into thinking she had a dangerous weapon. The object that was her hand, together with the object covering it, the towel, appeared to them to be a weapon. Though she may not have displayed the hand that gave the appearance of a firearm when draped by the towel, she certainly possessed both her hand and the towel and

from the victims' testimony seems to have brandished them to good effect.

This is not a case of first impression with respect to the issue of whether the language in the commentary equating an object that has only the appearance of a weapon with one that actually is a weapon is contrary to the text of the Guideline itself, which refers only to a "dangerous weapon." Case law throughout the country has used the commentary to enhance sentences in many situations in which no real gun was present, and we can see no material distinction between those situations and the case before us. Some examples are: *United States v. Shores*, 966 F.2d 1383, 1387 (11th Cir.), *cert. denied,* — U.S. ——, 113 S.Ct. 353, 121 L.Ed.2d 268 (1992) (possession of toy gun warranted increase even though not revealed during commission of crime); *United States v. Taylor*, 960 F.2d 115, 116 (9th Cir.1992) (appearance of bulge in waistband of pants sufficient to apply three-level increase); *United States v. Pool*, 937 F.2d 1528, 1530–31 (10th Cir.1991) (concealment of toy pistol warranted enhancement).

In *Taylor*, the robber gave the teller a note stating that it was a hold up and that he had a gun in the waistband of his pants. *Taylor*, 960 F.2d at 116. The defendant then pulled up his shirt to reveal a t-shirt and underneath the t-shirt, in the waistband of his pants, appeared a bulge in his clothes that, in outline, seemed to be a concealed firearm. *Id.* No gun was ever actually seen, but the defendant never denied that there was a gun in his waistband. *Id.* The court in *Taylor* noted the fear instilled in the victim and the use of this fear to facilitate the offense. Fletcher's simulation, like Taylor's, created a risk that the perpetrator's actions would provoke a violent response by victims or the police. *Id.*

*United States v. Coe*, 891 F.2d 405 (2d Cir.1989) and *United States v. Hawkins*, 901 F.2d 863 (10th Cir.1990), which hold the contrary, were decided before the effective date of the 1989 amendments to the Guidelines which added application note 1(d) to section 1B1.1. Application note 1(d), how-

ever, now expressly equates appearance with reality. By the time Stephanie Fletcher and her brother, acting at Dixon's direction, committed the robbery before us, the Commission had effectively rendered *Coe* and *Hawkins* obsolete by incorporating application note 1(d) of the Commentary to section 1B1.1 into note 1 of the commentary to section 2B3.1.

We are unable to see any material difference between the present situation and that presented by either the toy gun cases or the case involving the bulge in the waistband. It has been uniformly held that a robber who carries a toy gun or an unloaded or inoperable real gun during the commission of a bank robbery creates an enhanced risk of violence. A robber who creates the appearance of possession of a gun, *i.e.* by placing a towel over his or her hand and pretending to possess a gun, creates similar risks as well. Stephanie Fletcher effectively utilized her hand and a towel for the same purpose as the defendants in those cases; namely, in order to create the appearance of a gun and so frighten the bank employees into acceding to the robbers' criminal acts.

The risk that is created when a robber displays a toy gun is similar to the risk created when carrying an unloaded gun.

> First, the robber subjects victims to greater apprehension. Second, the robber requires law enforcement agencies to formulate a more deliberate, and less efficient, response in light of the need to counter apparent direct and immediate threat to human life. Third, the robber creates a likelihood that the reasonable response of police and guards will include the use of deadly force. The increased chance of an armed response creates a greater risk to the physical security of victims, bystanders, and even the perpetrators. Therefore, the greater harm that a robber creates by deciding to carry a toy gun is similar to the harm he creates by deciding to carry an unloaded gun.

*United States v. Martinez–Jimenez*, 864 F.2d 664, 666–67 (9th Cir.), *cert. denied,* 489 U.S. 1099, 109 S.Ct. 1576, 103 L.Ed.2d 942 (1989).

The rationale of these Guidelines cases is the same as that of the Commission. The Commission's rationale, in turn, is the same as the Supreme Court's rationale in deciding that Congress intended a similarly expansive construction of the phrase, "dangerous weapon," in an analogous statutory context. *See McLaughlin v. United States,* 476 U.S. 16, 18–19, 106 S.Ct. 1677, 1678, 90 L.Ed.2d 15 (1986). There, the Supreme Court was called upon to determine the meaning of the phrase "dangerous weapon" in 18 U.S.C.A. § 2113(d). That statute provides an enhanced penalty for assault by use of a "dangerous weapon" during a bank robbery. In deciding that an unloaded handgun is a "dangerous weapon" within the meaning of section 2113(d), a unanimous Court stated that "the display of a gun instills fear in the average citizen ... [and] as a consequence, it creates an immediate danger that a violent response will ensue." *Id.* at 17–18, 106 S.Ct. at 1678. The Court also stated that

> The floor debate on the provision that became [18 U.S.C.A.] § 2113(d) indicates that Congress regarded incitement of fear as sufficient to characterize an *apparently dangerous article* (such as a wooden gun) as "dangerous" within the meaning of the statute.

*Id.* at 18 n. 3, 106 S.Ct. at 1678 n. 3 (citing 78 Cong.Rec. 8132 (1934)) (emphasis added).

In Guidelines cases, courts have thus relied on *McLaughlin* to hold that a defendant brandished, possessed or displayed a "dangerous weapon," not only in those instances in which a real but inoperable weapon was used but also when an object resembling a real weapon, such as a toy gun, was displayed. In *United States v. Gray,* 895 F.2d 1225 (8th Cir.1990) (per curiam), the court held that an unloaded BB gun was a dangerous weapon warranting a three-point increase in an unarmed bank robbery defendant's offense level. *Id.* at 1226. There, the defendant had argued that *McLaughlin* could be distinguished because the Guidelines, in contrast to 18 U.S.C.A. § 2113(d), focus on the actu-

al conduct of the defendant rather than the degree of danger perceived by others. *Id.* The United States Court of Appeals for the Eighth Circuit rejected the defendant's argument based upon its reading of *McLaughlin* and the Guideline application notes. *Id.; see also United States v. Smith,* 905 F.2d 1296, 1299–1300 (9th Cir. 1990) (inoperable pellet gun is dangerous weapon because display of even inoperable or unloaded gun instills fear in average citizen and creates possibility of immediate, violent response).

Even though Stephanie Fletcher did not possess an actual weapon underneath the concealing towel, her actions created a reasonable belief that she had a gun. Police responding to the crime or the victims of the crime could easily have retaliated violently because of the immediate threat they perceived. During the course of a robbery, people confronted with what they believe to be a dangerous weapon often find their perception impaired because of fear and the threat of violence. That perceived fear and threat can itself trigger a violent and even deadly response. In the instant case, the victims' beliefs that Stephanie Fletcher possessed a dangerous weapon were reasonable given the circumstances surrounding the crime.

The commentary to the applicable Guideline makes it clear that a robber's intentional creation of an appearance of possession of a dangerous weapon is sufficient to warrant enhanced punishment. We cannot say the Commission's expansion on the meaning of the Guideline phrase "dangerous weapon" in its 1990 commentary was unreasonable when we consider the cumulative effect of the meaning that the United States Supreme Court held Congress intended to give the same phrase in an analogous statute governing bank robbery, the case law under the Guidelines themselves, the broad discretion given the Commission to interpret its own Guidelines and the requirement that courts defer to such interpretations.

The district court did not err in increasing Dixon's base offense level for brandishing a dangerous weapon pursuant to the Guidelines. Therefore, we will affirm the convictions and sentence.

FULLAM, District Judge, dissenting.

Because Stephanie Fletcher's hand is not a "dangerous weapon", I cannot agree with the majority opinion, to the extent it upholds the three-point increase under § 2B3.1(b)(2)(C) of the guidelines. In my view, neither the guidelines nor the accompanying commentary warrants that increase, and the interpretation espoused by the majority violates the spirit, as well as the letter, of the guidelines.

I agree that the commentary of the Sentencing Commission "is controlling on the construction of the guideline phrase 'dangerous weapon' unless it contradicts the guideline text". [Majority Op. p. 122.] I repeat the language of the commentary:

"(c) 'Brandished' with reference to a dangerous weapon (including a firearm) means that the weapon was pointed or waved about, or displayed in a threatening manner

(d) 'Dangerous weapon' means an instrument capable of inflicting death or serious bodily injury. When an *object that appeared to be a dangerous weapon* was brandished, displayed, or possessed, treat the object as a dangerous weapon." (Emphasis added.)

The error of the majority, in my view, is its assumption that, in this context, the co-defendant's *hand* was an object which "appeared to be a dangerous weapon". We do not ordinarily think of our hands as objects, and it is clear to me that the Sentencing Commission shares this general view.

All of the cases cited in the majority opinion on this point differ from our case in that crucial particular: in each of the cited cases, there was some object *other than the defendant's own body* which reasonably appeared to *be* a dangerous weapon. As the majority tacitly concedes, the towel which was wrapped around Stephanie Fletcher's hand was not perceived to be, and could not reasonably be regarded as, a weapon of any kind, let alone a dangerous one.

I am confident that if the Sentencing Commission had intended to require the three-level increase whenever a defendant pretended to possess a dangerous weapon, the Commission would have said so. Instead, the Commission plainly required that the defendant possess an *object* which either was or resembled a dangerous weapon.

I recognize that, on the issue of whether the crime committed was indeed robbery, in that it involved the unlawful acquisition of money or property by the use of force or threat of force, the distinction between actual and make-believe weapons is immaterial: if the victim reasonably perceives that force may be used, the crime is made out. But when the issue is whether the already substantial penalty for robbery should be increased because of the use of a dangerous weapon, the extent of actual risk of harm occasioned by the defendant is the crucial factor.

The guidelines involved here must be applied to a wide range of criminal behaviors, ranging from the defendant who aims a loaded firearm, to the defendant whose genuine firearm is unloaded, to the defendant whose firearm is a toy, to the defendant who is unarmed and merely hands the teller a note demanding money. The cases cited in the majority opinion hold, and I agree, that the three-level increase is called for in all but the last of these categories. This is because (a) there appears to be a weapon, and (b) it is seldom possible to establish, after the fact, the precise nature of the weapon on display. There is no unfairness in resolving ambiguities against the defendant, in such circumstances.

But where, as in this case, it is stipulated and undisputed that the defendant was *not* carrying a weapon of any kind, applying the three-level increase is utterly unreasonable, and would seriously undermine a principal purpose of the guidelines—to deter criminals from using dangerous weapons. Under the majority's holding, criminals have no incentive to minimize potential harm to innocent victims.

Absent clear and unequivocal direction from Congress or the Sentencing Commission, I do not believe we should strain to reach such an anomalous result. I therefore respectfully dissent.