

1998 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-27-1998

# United States v. Weadon

Precedential or Non-Precedential:

Docket 97-3256

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1998

Recommended Citation

"United States v. Weadon" (1998). *1998 Decisions*. Paper 124.
http://digitalcommons.law.villanova.edu/thirdcircuit_1998/124

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 1998 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed May 27, 1998

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 97-3256

UNITED STATES OF AMERICA

v.

LESLIE THOMAS WEADON, JR.

APPEAL FROM THE
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
D.C. Criminal No. 96-cr-00162

ARGUED JANUARY 22, 1998

BEFORE: BECKER, Chief Judge, and STAPLETON,
Circuit Judge, and POLLAK,* District Judge.

(Filed: May 27, 1998)

Mary Beth Buchanan (ARGUED)
Office of the United States Attorney
633 United States Post Office
 and Courthouse
Pittsburgh, PA 15219

 Attorney for Appellee

_____

* Honorable Louis H. Pollak, United States District Judge for the Eastern
District of Pennsylvania, sitting by designation.

          Karen S. Gerlach (ARGUED)
          Office of Federal Public Defender
          960 Penn Avenue
          415 Convention Tower
          Pittsburgh, PA 15222

           Attorney for Appellant

OPINION OF THE COURT

POLLAK, District Judge.

Section 2B3.1 of the Sentencing Guidelines establishes
offense levels for those federal crimes which constitute
types of "robbery." The base offense level is 20. U.S.S.G.
S 2B3.1. Enhancement of the base offense level is mandated
whenever the generic crime of robbery has especially
hurtful consequences (e.g., serious bodily injury or the loss
of property of great value) or is carried out in conjunction
with any of the other forms of disapproved conduct that the
Sentencing Commission has particularized under the
heading "Specific Offense Characteristics." Thus, sub-
section (b)(2) of S 2B3.1 calls for offense-level enhancements
of the base offense level ranging from two levels, "if a threat
of death was made," U.S.S.G. S 2B3.1(b)(2)(F), to seven
levels, "[i]f a firearm was discharged." U.S.S.G.
S 2B3.1(b)(2)(A). A five-level enhancement is called for "if a
firearm was brandished, displayed, or possessed." U.S.S.G.
S 2B3.1(b)(2)(C). It is the proper construction of this latter
provision that is placed in issue in this appeal.

The precise question presented by this appeal is whether
a firearm concealed on the person of one who is committing
a bank robbery is "a firearm" which, within the meaning of
U.S.S.G. S 2B3.1(b)(2)(C), "was possessed" (emphasis
added). In calculating appellant's sentence, the district
court found that the firearm was "possessed," and
accordingly added five levels to the base offense level. We
agree with the district court's reading of the guideline, and
we therefore affirm.

2

I.

Between May and August of 1996, four Pittsburgh banks
were robbed, and bank surveillance photographs taken at
the time of the robberies suggested that one person had
committed all four robberies. On October 4, 1996, FBI
agents were assigned to patrol downtown Pittsburgh with a
view to finding the robber. One of the agents spotted a man
-- Leslie Thomas Weadon -- who looked like the
surveillance photographs, and he was arrested. When
arrested, Weadon had a gun in the waistband of his
trousers. Subsequent to his arrest Weadon acknowledged
that he had committed the four bank robberies and that he
had carried a gun in his pocket on three of the four
occasions. On October 8, 1996, Weadon was indicted on
four counts of bank robbery in contravention of 18 U.S.C.
S 2113(a).

On November 29, 1996, Weadon pleaded guilty to the
four-count indictment. Hearings on sentence were held on
April 17 and April 24, 1997, and sentence was imposed on
the latter date. Over defense counsel's objection that
Weadon's concealed weapon played no part in any of the
three bank robberies in which he had it in his pocket, the
district court added five points to the base offense level on
the ground that Weadon's having the firearm on his person
during the robberies meant that he "possessed" the firearm
within the meaning of U.S.S.G. S 23B.1(b)(2)(C) (five level
enhancement "if a firearm was brandished, displayed, or
possessed"). The five-level enhancement resulted in an
offense level of 28 and (since Weadon had no prior criminal
record and hence was in criminal history category I) a
guideline incarceration range of 78-97 months.1 The district
court imposed a prison term of 78 months. (But for the
five-level enhancement, the guideline range would have

_____

1. Weadon's base offense level was 20 under U.S.S.G. S 2B3.1. Because
the victim was a financial institution, two points were added to his
offense level pursuant to S 2B3.1(b)(1). Four points were then added to
his offense level based on the multiple counts of robbery. See S 3D1.4.
Weadon's offense level was also raised by five points under
S 2B3.1(b)(2)(C) because he possessed a firearm during three of the four
robberies. Finally, Weadon received a three point reduction of his offense
level for acceptance of responsibility under S 3E1.1.

been 46 to 57 months). In appealing his sentence, Weadon challenges the district court's reading of U.S.S.G. S 23B.1(b)(2)(C) as mandating a five-level enhancement. Our review of a district court's interpretation of the sentencing guidelines is de novo. United States v. Dixon, 982 F.2d 116 (3d Cir. 1992), cert. denied, 508 U.S. 921 (1993).

II.

As explained above, at Weadon's sentencing his base offense level was enhanced by five levels pursuant to the directive of U.S.S.G. S 2B3.1(b)(2)(c) that "if," in the course of a robbery, "a firearm was brandished, displayed, or possessed, increase by five levels." As noted, the predicate for the enhancement was the fact that Weadon had a gun in his pocket during three of the four robberies to which he pleaded guilty.

On appeal Weadon contends that carrying a gun in one's pocket is not possession of that gun within the intendment of the quoted guideline. Weadon argues "that `possessed' should be construed similarly to `brandished' or `displayed,' and that the guideline should not be applied to enhance a sentence where the firearm was not utilized during the robbery." In support of these linked contentions Weadon makes two linked arguments. The argument that the guideline is without application unless the firearm has been "utilized during the robbery" draws upon the fact that Application Note 4 of the Sentencing Commission's Commentary on S 2B3.1 specifies that "[t]he combined adjustments for weapon involvement and injury are limited to a maximum enhancement of 11 levels;" the Commentary's use of the phrase "weapon involvement" is said by Weadon to evidence "a clear intention that for the enhancement to apply, the firearm must be actively used or employed to further the goals of the robbery." The argument that " `possessed' should be construed similarly to `brandished' or `displayed' " is based upon the ejusdem generis principle that, as Black's Law Dictionary puts the matter, "where general words follow the enumeration of particular classes of things, the general words will be construed as applying only to things of the same general

4

class as those enumerated." Black's Law Dictionary 517 (6th ed. 1990).

We find neither argument persuasive:

(1) Weapon Involvement

Based on Application Note 4's reference to "weapon involvement," Weadon reasons that "for the enhancement to apply, the firearm must be actively used or employed to further the goals of the robbery." Since, during the three bank robberies in question, Weadon's gun was lodged in his pocket and no one other than Weadon was aware of its presence, Weadon contends that the sense in which he could be said to have possessed the gun lacked any ingredient of "involvement" in the robberies and hence cannot properly warrant enhancement of his sentence. The implicit predicate of this contention is that a concealed weapon whose existence is unknown to the victim is necessarily irrelevant to the crime. We reject that predicate. And, what is more important, it is evident to us that the Sentencing Commission, as author of S 2B3.1(b)(2)(C), also rejects it. Evidence to this effect can be found if one traces S 2B3.1(b)(2)(C) back to its source.

In September of 1986 the Sentencing Commission published a "preliminary draft" of the guidelines scheduled to go into force the following year. Four months later -- in January of 1987 -- the Sentencing Commission, having reviewed the extensive public comment on the preliminary draft, published a "revised draft." Section B231 of the revised draft -- "Robbery and Attempted Robbery" -- was the final draft formulation of the robbery guideline and hence was the immediate progenitor of S 2B3.1 as formally promulgated by the Sentencing Commission to take effect in the fall of 1987. The four specific offense characteristics dealt with in revised draft S B231 were: (1) weapons, (2) whether the crime "involved a financial institution or a federal facility," (3) whether "the object of the robbery or attempted robbery was a controlled substance and the offense occurred in a pharmacy or other location where controlled substances were legitimately manufactured or stored," and (4) "the value of the property taken." Among the specific offense characteristics not dealt with in revised

5

draft S B231, but which were to appear several months later in S 2B3.1, the most salient were: (1) whether "any victim sustained bodily injury," and (2) the abduction or physical restraint of "any person" in order "to facilitate commission of the offense or to facilitate escape."2

Of particular pertinence to our present inquiry are (1) the first of the specific offense characteristics proposed in revised draft S B231, and (2) a portion of the Sentencing Commission's Commentary. The first of the specific offense characteristics in the revised draft was S B231(a)(1):

> If a weapon or dangerous instrumentality was used, displayed, or possessed in the commission of the offense, increase by 3 to 6 levels, depending upon the use made of the weapon.

In its Commentary to revised draft S B231 the Sentencing Commission said: "The use of a firearm or dangerous weapon constitutes the most serious aggravating characteristic of a robbery. Since possession of a weapon during a robbery adds significantly to the potential danger of injury, the guidelines provide an enhancement where a weapon was present."

The transition from revised draft guideline S B231 to guideline S 2B3.1 as it went into effect in the fall of 1987 worked a change in the structure of the specific offense characteristic governing weapons. U.S.S.G. S 2B3.1(b)(2) provided as follows:

> (A) If a firearm was discharged increase by 5 levels; (B) if a firearm or a dangerous weapon was otherwise used, increase by 4 levels; (C) if a firearm or other dangerous weapon was brandished, displayed or possessed, increase by 3 levels.

By way of "Background" the Sentencing Commission's Commentary on S 2B3.1 commenced its discussion with the following recital: "Possession or use of a weapon, physical injury, and unlawful restraint sometimes occur during a robbery. The guideline provides for a range of enhancement

_____

2. Subsequent amendments of S 2B3.1 have added other specific offense characteristics and broadened existing categories.

6

when these factors are present." This "Background" recital
has remained constant throughout the various
amendments of S 2B3.1. It seems a fair inference that
underlying the Sentencing Commission's continuing
adherence to the principle of sentence enhancement for
"possession" as well as "use" of a weapon is the Sentencing
Commission's January 1987 observation that "possession
of a weapon during a robbery adds significantly to the
potential danger of injury." Accordingly, the concealed gun
of a bank robber may properly be regarded as coming
under the heading of "weapon involvement." 3

(2) Whether " `possessed' should be construed
similarly to `brandished' or `displayed' "

As noted above, Weadon's argument that " `possessed'
should be construed similarly to `brandished' or
`displayed' " invokes the principle of ejusdem generis. The
standard treatise on statutory interpretation states the
principle of ejusdem generis as follows:"Where general
words follow specific words in a statutory enumeration, the
general words are construed to embrace only objects
similar in nature to those objects enumerated by the
preceding specific words." 2A Sutherland Statutory

_____

3. The proposition that the dangers attendant on criminal conduct are
compounded when the offender has a weapon on his person is hardly
novel. Consider 18 U.S.C. S 924(c)(1), providing that "[w]hoever, during
and in relation to any crime of violence or drug trafficking crime . . .
for
which he may be prosecuted in a court of the United States, uses or
carries a firearm, shall, in addition to the punishment provided for such
crime of violence or drug trafficking crime, be sentenced to imprisonment
for five years. . . ." In Bailey v. United States, 516 U.S. 137 (1995) the
Supreme Court rejected the expansive reading of the verb "uses"
advanced by the government -- a reading so broad that it would have
left "carries" without any independent scope. Said Justice O'Connor,
speaking for a unanimous Court: "While a broad reading of `use'
undermines virtually any function for `carry,' a more limited, active
interpretation of `use' preserves a meaningful role for `carries' as an
alternative basis for a charge. Under the interpretation we enunciate
today, a firearm can be used without being carried, e.g., when an
offender has a gun on display during a transaction, or barters with a
firearm without handling it; and a firearm can be carried without being
used, e.g., when an offender keeps a gun hidden in his clothing
throughout a drug transaction." Id. at 146.

Construction (1992 ed.) S 47.17.4 The ejusdem generis rule of construction has no application to U.S.S.G. S 2B3.1(b)(2)(C), since the three words in the guideline sequence -- "brandished, displayed, or possessed" -- are all specific; that is to say, there is no general word to be assigned content by reference to preceding specific words.

Weadon is not the first person to argue that, in order to make sense out of S 2B3.1(b)(2)(C), one must read "possessed" as having a narrowed connotation drawn from its neighbors -- "brandished" and "displayed." In United States v. Johnson, 37 F.3d 1352 (9th Cir. 1994), cert. denied, 513 U.S. 1175 (1995), appellant Johnson, challenging sentence, made essentially the same argument -- and did so, apparently, without nailing the argument to the procrustean bed of ejusdem generis. Johnson was a bank robber. "Upon Johnson's arrest, police discovered an unloaded firearm concealed in his pants. Johnson admitted he carried the weapon in his pants during the robbery, but he never showed it to anyone inside the bank, nor did he inform the bank teller he had a gun." Id. at 1353. Johnson "argue[d] the 5-level enhancement for possession of a weapon pursuant to U.S.S.G. S 2B3.1(b)(2)(C) was inappropriate because the gun was concealed during the robbery and no victim was aware of its presence." Id. The Ninth Circuit rejected the argument:

> U.S.S.G. S 2B3.1(b)(2)(C) provides a 5-level enhancement "if a firearm was brandished, displayed, or possessed" during a robbery. The guidelines define "brandished" as "pointed or waved about, or displayed n a threatening manner." U.S.S.G. S 1B1.1, comment. (n.1(c)). The guidelines do not further define "displayed"

_____

4. As the Court stated in Cleveland v. United States, 329 U.S. 14, 19 (1946) (construing the Mann Act phrase "for the purpose of prostitution or debauchery, or for any other immoral purpose"), "[u]nder the ejusdem generis rule of construction the general words are confined to the class and may not be used to enlarge it;" compare the dissenting opinion of Justice Murphy, id. at 24-25, and the concurring opinion of Justice Rutledge, id. at 21; and see also the opinion of the Court in Caminetti v. United States, 242 U.S. 470, 487 (1917) and the dissenting opinion of Justice McKenna, id. at 497. Cf. United States v. Parson, 955 F.2d 858, 869 n.15 (3d Cir. 1992).

or "possessed." Johnson argues this court should interpret "possessed" to mean "visibly possessed" or possessed in such a way that the robbery victim is aware of, and thus threatened by, the weapon's presence.

To support his assertion, Johnson cites United States v. Powell, 6 F.3d 611 (9th Cir. 1993). Powell held that courts should avoid interpretations that render some portions of the guidelines superfluous or do not give effect to all terms used. Powell, 6 F.3d at 614. Johnson asserts the district court's interpretation of "possessed" eliminates the need for "brandished" and "displayed." Johnson argues the three terms refer to different levels of visible firearm possession, ranging from pointing the weapon at victims to simple "open possession not amounting to an ostentatious showing."

The Powell holding does not invalidate Johnson's sentence enhancement. Johnson is correct that if the enhancement applies any time a defendant possesses a firearm during a robbery, it appears irrelevant whether the firearm is brandished or displayed. However, this is also true if we interpret "possessed" to mean "visibly possessed." Even if we were to accept Johnson's contention that a weapon is "possessed" only when it is visible, the other terms of the guidelines would still appear superfluous.

* * *

The plain meaning of the word "possessed" also favors upholding Johnson's sentence. "Possess" is defined as "to have in one's actual and physical control; to have the exclusive detention and control of." Black's Law Dictionary 1046 (5th ed. 1979). We are aware of no definition of "possess" that requires an object to be visible in order to be possessed.

Id. at 1353-54. We agree with the Ninth Circuit.[5]

_____

5. Weadon also seeks to draw comfort from United States v. Dixon, 982 F. 2d 116 (3d Cir. 1992), cert. denied, 508 U.S. 921 (1993). In Dixon, this court affirmed enhancement of a bank robber's sentence pursuant to former S 2B3.1(b)(2)(C)(three-level enhancement "if a dangerous weapon

Conclusion

For the foregoing reasons, the judgment of the district
court is affirmed.

(Text continued on page 12)

_____

was brandished, displayed, or possessed") where the robber's accomplice
had a towel over her hand in a manner perceived by bank employees as
signifying that under the towel she held a gun. Enhancement was found
proper based on a Commentary application note stating that "[w]here an
object that appeared to be a dangerous weapon was brandished,
displayed, or possessed, treat the object as a dangerous weapon." We
held that the accomplice's covered hand was an "object" and that "[t]he
object that was her hand, together with the object covering it, the towel,
appeared to [the bank employees] to be a weapon." 982 F.2d at 122. In
contrast, so Weadon contends, "in a case such as this where the victims
were unaware of Mr. Weadon's firearm and were thus unaffected by it,
an enhancement based upon the presence of the firearm would in fact
contravene Dixon." Weadon's contention overlooks the fact that in Dixon
-- which dealt with a "dangerous weapon" (not a "firearm") -- what was
crucial was the Sentencing Commission's recital that"an object that
appeared to be a dangerous weapon" should be treated as one, thus
authorizing enhancement where no actual dangerous weapon was
"brandished, displayed, or possessed." In the case at bar, Weadon
"possessed" an actual firearm while engaged in three of his four
robberies.

The view that the Ninth Circuit reached the proper result in Johnson
does not signify that the wording of S 2B3.1(b)(2)(C) is a model of the
guideline-drafter's art. The word "possessed" appears to swallow up
"brandished" and, in almost all instances,"displayed" as well. [The rare
instance in which a "displayed" gun might, arguably, be said not to be
"possessed" is exemplified by an illustration proffered by the Supreme
Court in Bailey v. United States, 516 U.S. 137, 146 (1995): "a firearm
can be used without being carried, e.g., when an offender has a gun on
display during a transaction;" but even this is likely to be deemed
constructive possession]. How did this verbal anomaly come about? Again
it may be helpful to consider the genesis of the guideline.

As we have already noted, the weapons portion of the January 1987
revised draft -- S B231(a)(1) -- was phrased in the following simple
terms: "If a weapon or dangerous instrumentality was used, displayed, or
possessed in the commission of the offense, increase by 3 to 6 levels,
depending upon the use made of the weapon." A purist might have
pointed out that the sentence was not syntactically optimal, since "use,"

10

in the phrase "the use made of the weapon," evidently was intended to comprehend not only "used" but "displayed" and "possessed" as well; nonetheless, the sentence conveyed with reasonable clarity a range of weapon-related conduct in which possession -- mere possession -- called for the least enhancement, display called for intermediate enhancement, and use of some more elaborate and dangerous kind called for maximum enhancement. As we have seen, theS B231(a)(1) formulation was not followed in S 2B3.1(b)(2) as the latter was drafted and went into effect in the fall of 1987: "(A) If a firearm was discharged, increase by 5 levels; (B) if a firearm or a dangerous weapon was otherwise used, increase by 4 levels; (C) if a firearm or other dangerous weapon was brandished, displayed or possessed, increase by 3 levels." The transition from draft language to operative language had the undoubted benefit of singling out the discharge of a firearm as warranting a more severe response at sentencing than any other category of weapons use. But the same transition had the untoward result of bracketing the brandishing, display and possession of weapons in a single category with identical enhancement consequences -- an awkward result syntactically if not penologically. That bracketing has persisted to this day, notwithstanding that the guideline has been amended more than once.

With respect to the Sentencing Commission's abiding concern for the potentially malign consequences of "possession" of a firearm, particular note should be taken of the amendment of S 2B3.1(b)(2) which took effect on November 1, 1991. Prior to that date S 2B3.1(b)(2) read as follows:

        (A) If a firearm was discharged, increase by 5  levels; (B) if a
        dangerous weapon (including a firearm) was otherwise used,
        increase by 4 levels; (C) if a dangerous weapon (including a firearm)
        was brandished, displayed, or possessed, increase by 3 levels; (D) if
        an express threat of death was made, increase by 2 levels.

As amended, S 2B3.1(b)(2) achieved its present form:

        (A) If a firearm was discharged, increase by 7  levels; (B) if a firearm
        was otherwise used, increase by 6 levels; (C) if a firearm was
        brandished, displayed, or possessed, increase by 5 levels; (D) if a
        dangerous weapon was otherwise used, increase by 4 levels; (E) if a
        dangerous weapon was brandished, displayed, or possessed,
        increase by 3 levels; or (F) if a threat of death was made, increase
        by 2 levels.

In explaining this substantial reconstruction of the guideline, the Sentencing Commission stated: "This amendment increases the offense levels for use or possession of a firearm by 2 levels to better reflect the

A True Copy:
Teste:

      Clerk of the United States Court of Appeals
      for the Third Circuit
_____

seriousness of such offenses and to reduce the disparity resulting from
the exercise of prosecutorial discretion in the charging of an offense
under 18 U.S.C. S 924(c) [mandatory minimum sentence for crime of
using or carrying a firearm during or in relation to a crime of violence
or
drug trafficking] or S 929(a) [mandatory minimum sentence for crime of
using or carrying a firearm and possessing armor piercing ammunition
during and in relation to a crime of violence or drug trafficking]."

12