**UNITED STATES of America**

v.

**Anthony R. BIAFORE, also known as Anthony Biafore, Appellant.**

**No. 07–4113.**

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit LAR 34.1(a) June 25, 2009.

Opinion Filed: July 14, 2009.

George S. Leone, Esq., Office of United States Attorney, Newark, NJ, for Appellee.

Michael N. Huff, Esq., Philadelphia, PA, for Appellant.

Before: BARRY, SMITH, Circuit Judges, and DuBOIS * District Judge.

## OPINION

BARRY, Circuit Judge.

Defendant Anthony Biafore pled guilty to a one-count information charging him with bank robbery in violation of 18 U.S.C. §§ 2113(a) and 2.[1] He received a within-Guidelines sentence of fifty-seven months imprisonment, and he appeals. We will affirm.

## I. Background

At approximately 9 a.m. on April 22, 2006, Biafore entered the PNC Bank at 3400 Atlantic Avenue in Atlantic City, New Jersey. He thrust his left hand into his pocket as if he had a weapon and walked directly to the nearest teller window to demand money. The first teller refused to turn over any money, and Biafore proceed-ed to a second teller. That teller complied and turned over approximately $982. Biafore fled on foot. A subsequent FBI investigation used the bank's surveillance tape to identify Biafore, who admitted to the robbery.

On October 10, 2006, Biafore pled guilty pursuant to a written plea agreement. The agreement set forth the factual basis for the plea, stating, in relevant part, that "[w]hile in the PNC Bank ... Biafore approached a teller and demanded money while thrusting his left hand into his pocket as if he had a weapon." (Supplemental Appendix at 6.) It further stated that "Biafore acknowledges that at the time he robbed the PNC Bank in Atlantic City, the deposits of that bank were insured by the Federal Deposit Insurance Corporation." (*Id.*) Biafore orally verified the contents of the agreement at his plea colloquy.

Applying the 2007 edition of the Guidelines, the Probation Department initially calculated Biafore's total offense level to be twenty. That calculation included a three-level enhancement for brandishing a dangerous weapon. *See* U.S.S.G. § 2B3.1(b)(2)(E). A two-level enhancement was later added because Biafore took "the property of a financial institution," *id.* at § 2B3.1(b)(1). The final Presentence Report ("PSR") was issued on October 3, 2007—fifteen days before sentencing.

At sentencing, defense counsel argued that Biafore's conduct did not amount to brandishing as that term is used in U.S.S.G. § 2B3.1(b)(2)(E), because he merely placed his hand in his pocket and

---

\* Honorable Jan E. DuBois, Senior Judge, United States District Court for the Eastern District of Pennsylvania, sitting by designation.

1. Title 18 U.S.C. § 2113(a) provides, in relevant part, "[w]hoever ... by intimidation, takes ... from the person or presence of another ... any ... money ... in the care, custody, control, management, or possession of, any bank ... [s]hall be ... imprisoned not more than twenty years...." As used in the section, " 'bank' means any member bank of the Federal Reserve System ... and any institution the deposits of which are insured by the Federal Deposit Insurance Corporation." *Id.* at § 2113(f).

did not represent that he was carrying a firearm. The District Court was unpersuaded, stating:

> [I]t's clear to me that Mr. Biafore placed his left hand aggressively and actively in his pocket in a way to create the impression that he had an instrument of inflicting death ... and he did so intentionally in order to induce the teller to turn over money from the bank.... His demand for money, coupled with thrusting his hand into his pocket and keeping it there, acting in his own mind with the intention of creating the impression of a weapon, and in fact having created that impression with the teller, are coupled together sufficient in my mind to ... apply those additional three points.

(Appendix at 108.) Defense counsel also argued that the Probation Department's failure to comply with Federal Rule of Criminal Procedure 32—which requires the PSR to be submitted to the defendant "at least 35 days before sentencing"— amounted to a violation of procedural due process. The Court was also not impressed with that contention, noting that while it was "sensitive to the right of the defendant to raise all possible factual and legal issues at sentencing in his defense ... there is no reasonable issue or question as to the nature of the institutional victim in this case [and] additional time would not result in the possibility" of a different outcome. (*Id.* at 97.) The Court continued: "[N]o reasonable argument can be made that the [§ 2B3.1(b)(1) ] specific offense character[istic] does not apply, the defendant having admitted all the operative facts." (*Id.* at 98.)

With a total offense level of twenty-two and a criminal history category of III, the resultant Guideline range was fifty-one to sixty-three months. The District Court imposed a sentence of fifty-seven months.

## II. Discussion

"We review the District Court's interpretation of the Sentencing Guidelines *de novo*, and scrutinize any findings of fact for clear error." *United States v. Aquino*, 555 F.3d 124, 127 (3d Cir.2009) (citation omitted).

### A. Brandishing a Dangerous Weapon

Guideline § 2B3.1(b)(2)(E) provides for a three-level enhancement if the defendant brandished a dangerous weapon during the commission of the offense. As the application notes explain, "an object shall be considered to be a dangerous weapon" if "the defendant used the object in a manner that created the impression that the object was an instrument capable of inflicting death or serious bodily injury (*e.g.*, a defendant wrapped a hand in a towel during a bank robbery to create the appearance of a gun)." *See id.* at § 2B3.1 cmt. n. 2. "The Third Circuit was the first to consider whether a hand could be an object for the purposes of the definition of the term 'dangerous weapon,'" *United States v. Farrow*, 277 F.3d 1260, 1266 (10th Cir.2002) (citing *United States v. Dixon*, 982 F.2d 116 (3d Cir.1992)). We held that where a defendant "did not possess an actual weapon" but nonetheless "created a reasonable belief that she had a gun," the enhancement applied. *Dixon*, 982 F.2d at 124; *see United States v. Stitman*, 472 F.3d 983, 986 (7th Cir.2007) ("courts are to apply an objective standard in determining whether a particular object appeared to be a dangerous weapon") (quotation marks and citations omitted).

Here, Biafore admitted to demanding money from a bank teller "while thrusting his left hand into his pocket as if he had a weapon," (Appendix at 54) and one frightened teller complied. The facts are nearly indistinguishable from those in *Dixon*, where the defendant "pointed menacingly"

at the bank tellers, with a "towel-draped hand." 982 F.2d at 119; *see* U.S.S.G., Appendix C, Amendment 601 (revising Guideline section to "clarify under what circumstances an object that is not an actual dangerous weapon should be treated as one" and citing *Dixon* as a model). The District Court appropriately applied the enhancement. *See Farrow*, 277 F.3d at 1261–62, 1268 (applying enhancement where defendant admitted "he did not have a gun, but did have his hand in his pocket as if he had one" and told teller not to make him "do something reckless") (quotation marks omitted).

### B. Due Process

■ Biafore contends that the government's failure to follow Federal Rule of Criminal Procedure 32(e)(2) by belatedly issuing a final PSR only fifteen days before sentencing ran afoul of his right to procedural due process. The final PSR included a previously-absent two-point enhancement for taking the "property of a financial institution." U.S.S.G. § 2B3.1(b)(1).[2] We have stated that "due process requires reasonable notice and a meaningful opportunity to be heard in regard to both the factual predicate of a sentence and the potential punishments which may be imposed at sentencing." *United States v. Ausburn*, 502 F.3d 313, 326 (3d Cir.2007). Although we have noted that the central purpose of Rule 32 is to protect due process considerations, we have not embraced Biafore's argument that precise compliance with the rule is a constitutional requirement. *See id.* We will not do so now.

A failure to provide the notice required by Rule 32 "may be considered harmless unless the defendant can prove that he would have done things differently had notice been given." *United States v. Himler*, 355 F.3d 735, 742 (3d Cir.2004); *cf. Irizarry v. United States*, —— U.S. ——, 128 S.Ct. 2198, 2203, 171 L.Ed.2d 28 (2008) (noting that because the parties were already aware of the District Court's consideration of 18 U.S.C. § 3553(a) factors, notice of a "contemplated [ ] variance" would not "have changed the parties' presentations in any material way"). Biafore admitted in his plea agreement and later at his plea colloquy that he robbed the PNC Bank in Atlantic City, the "deposits [of which] were insured by the Federal Deposit Insurance Corporation." (Supplemental Appendix at 6.) He was bound by that admission at sentencing; indeed, he acknowledged as much when he expressly declined to seek an "adjournment to provide [time] to conduct additional investigation or to otherwise respond" to the proposed enhancement. (Appendix at 93.) Any Rule 32 error was, therefore, harmless (and were we to consider the thirty-five day requirement to be mandated by due process, it was harmless beyond a reasonable doubt).

### III. Conclusion

We will, therefore, affirm the judgment of sentence.

---

2. Guideline § 2B3.1 does not define "financial institution," but the application notes to § 2B1.1 state in relevant part, that " 'financial institution' includes any institution described in 18 U.S.C. § 20." *Id.* at § 2B1.1, cmt. n. 1; *see* 18 U.S.C. § 20 ("[a]s used in this title, the term 'financial institution' means … an insured depository institution");

*see also United States v. Washington*, 462 F.3d 1124, 1142 n. 11 (9th Cir.2006) (noting that defendant convicted of bank robbery in violation of 18 U.S.C. § 2113(a) necessarily qualifies for the two-point "financial institution" enhancement because "[b]y any definition of a 'financial institution,' a [federally insured bank] is considered a financial institution").