United States Court of Appeals,

Eleventh Circuit.

No. 96-6585.

UNITED STATES of America, Plaintiff-Appellee,

v.

Derrick D. VINCENT, Defendant-Appellant.

Sept. 17, 1997.

Appeal from the United States District Court for the Middle District of Alabama. (No. CR-96-s-(02)), Robert E. Varner, District Judge.

Before ANDERSON and COX, Circuit Judges+, ALARCÓN*, Senior Circuit Judge.

ALARCÓN, Senior Circuit Judge:

Derrick D. Vincent entered a plea of guilty to the crime of taking money from the person or presence of another by intimidation on a United States Army installation in violation of 18 U.S.C. § 2111.[1] The district court enhanced Vincent's sentence three levels for possession of a dangerous weapon during the offense, pursuant to U.S.S.G. § 2B3.1(b)(2)(E).

Vincent seeks a reversal of the court's sentencing decision because the victim of the robbery could not identify the object that was used to intimidate her. We must decide whether an enhancement is authorized pursuant to section 2B3.1(b)(2)(E) when the victim of a robbery was intimidated by the placing of a hidden object in her side, notwithstanding the fact that the object was not brandished or displayed. We affirm because we conclude that section 2B3.1(b)(2)(E) authorizes an enhancement under these circumstances.

I

---

*Honorable Arthur L. Alarcon, Senior U.S. Circuit Judge for the Ninth Circuit, sitting by designation.

[1]Section 2111 provides:

> Whoever, within the special maritime and territorial jurisdiction of the United States, by force and violence, or by intimidation, takes or attempts to take from the person or presence of another anything of value, shall be imprisoned not more than fifteen years.

The facts set forth in the presence report ("PSR") reflect that at approximately 10:30 p.m., on January 9, 1996, Sharon Bownes, the assistant manager of the Burger King restaurant, located on the U.S. Army post at Fort Rucker, Alabama, walked out of the restaurant carrying two money bags. As she approached her automobile, she was pushed against a wall. Gregory L. Woods placed an object against her side and demanded that she give him the money she was carrying. She did not see the object, but believed it was some type of weapon that was used to perpetrate a robbery. When Ms. Bownes dropped the bags, Vincent picked them up and ran.

Vincent, Woods, and Thornton were arrested on the following day. They were indicted for violating section 2111. Vincent pled guilty as charged. During the plea proceedings, Vincent stated that "[t]he plan was to use a butter knife to scare her." Vincent also stated that he did not see any weapon in Woods' possession because it was dark. Vincent denied personal use of a weapon.

The probation officer who prepared the PSR in this matter recommended to the court that the punishment should be enhanced three levels, pursuant to section 2B3.1(b)(2)(E),[2] because it appeared that a dangerous weapon was possessed by Woods during the commission of the robbery. The court adopted this recommendation and applied a three level enhancement in imposing sentence. Vincent filed a timely notice of appeal challenging the court's sentencing decision.

II

Vincent first contends that the district court erred as a matter of law in failing to rule on his objection "to the factual *conclusion* in the Presentence Report that a weapon of any kind has been used during the robbery." Appellant's Brief at 5 (emphasis added). Vincent argues that by failing to resolve the "factual dispute as to whether or not there was a weapon," the district failed to comply with its duty under Rule 32(c)(1) of the Federal Rules of Criminal Procedure to make a finding regarding the "factual dispute as to whether or not there was a weapon."[3] Appellant's Brief at 6. "We

[2]Section 2B3.1(b)(2)(E) provides in pertinent part: "if a dangerous weapon was brandished, displayed, or possessed, increase [the base offense level] by 3 levels."

[3]Rule 32(c)(1) provides:

2

review questions involving the legality of a sentence *de novo.*" *United States v. Taylor,* 11 F.3d 149, 151 (11th Cir.1994) (per curiam).

Rule 32(b)(6)(B) provides that a party may object to any "material information" contained in the PSR. The term "material information" is not defined. The ordinary meaning of the word "information" is "knowledge of a particular event or situation." Webster's Third New International Dictionary 1160 (1976). Where there is an objection to the recitation of information in the PSR, "the court must make either a finding on the allegation or a determination that no finding is necessary because the controverted matter will not be taken into account in, or will not affect, sentencing." Fed.R.Crim.P. 32(c)(1). Vincent has failed to demonstrate that the PSR contained a controverted factual allegation.

Vincent did not object to the *information* contained in the PSR. The PSR merely states that Ms. Bownes "believed that some type of weapon was used during the robbery."

Vincent's challenge to the PSR is directed toward the probation officer's *legal* conclusion that the enhancement set forth in section 2B3.1(b)(2)(E) applies when a robbery victim felt an object against her side which appeared to her to be a dangerous weapon, although she did not see it. Rule 32(c)(1) is not applicable to an objection to a probation officer's legal opinions or conclusions. *See United States v. Aleman,* 832 F.3d 142, 145 (11th Cir.1987) ("[W]hile a defendant may challenge statements of fact in the PSI, he cannot properly make Rule 32 objections that ... protest obvious recommendations, opinions, or conclusions that are not fundamentally factual in nature."). Whether the court erred in accepting the probation officer's interpretation of section 32(b)(6)(B) is a question of law which can be reviewed without an express statement by the district court that it has rejected

---

At the sentencing hearing, the court must afford counsel for the defendant and for the Government an opportunity to comment on the probation officer's determinations and on other matters relating to the appropriate sentence, and must rule on any unresolved objections to the presentence report. The court may, in its discretion, permit the parties to introduce testimony or other evidence on the objections. For each matter controverted, the court must make either a finding on the allegation or a determination that no finding is necessary because the controverted matter will not be taken into account in, or will not affect, sentencing. A written record of these findings and determinations must be appended to any copy of the presentence report made available to the Bureau of Prisons.

the defendant's objection to the probation officer's legal conclusion. Because the probation officer did not allege in the PSR that Vincent or Woods brandished, displayed, or possessed a dangerous weapon, the district court was not required by Rule 32(c)(1) to make a finding that no weapon was used.

III

Vincent presents two arguments in support of his contention that the district court erred in enhancing his sentence pursuant to section 2B3.1(b)(2)(E). First, he maintains that section 2B3.1(b)(2)(E) is inapplicable when "no weapon, toy or real, was brandished or displayed to the victim." Appellant's Brief at 7. Vincent contends that section 2B3.1(b)(2)(E) does not apply if the victim of a robbery does not actually see what appears to be a dangerous weapon. Secondly, Vincent maintains that a victim's "subjective thought that it was a weapon" is insufficient to support the enhancement provisions of section 2B3.1(b)(2)(E). We review *de novo* a district court's interpretation of the words used in the sentencing guidelines. *United States v. Shores,* 966 F.2d 1383, 1386 (11th Cir.), *cert. denied,* 506 U.S. 927, 113 S.Ct. 353, 121 L.Ed.2d 268 (1992).

Section 2B3.1(b)(2)(E) provides that the base offense level of 20 for a conviction of robbery is to be increased 3 levels "if a dangerous weapon was brandished, displayed, or possessed." The application notes to section 2B3.1(b)(2)(E) provide that "[w]hen an object that appeared to be a dangerous weapon was brandished, displayed, or possessed, treat the object as a dangerous weapon for the purposes of subsection (b)(2)(E)."

In *Shores,* this court addressed the question whether section 2B3.1(b)(2)(C)[4] applies when the perpetrator of a robbery possesses an object that appears to be a dangerous weapon, but does not display it. 966 F.2d at 1387-88. In that matter, the defendant was arrested as he walked toward the entrance of a bank he intended to rob. The officers found a toy gun concealed in his pocket. The toy gun was never drawn, nor did the defendant enter the bank. *Id.* at 1385.

The defendant in *Shores* was convicted of attempted bank robbery. The district court imposed a 3 level increase to the base offense. On appeal, the defendant argued that section 2B3.1(b)(2)(C) was inapplicable because "his possession of the toy gun, which never "appeared' to any one, cannot be considered possession of a dangerous weapon under the guidelines." *Id.* at 1387.

This court concluded in *Shores* that section 2B3.1(b)(2)(C) applied although a toy gun possessed by defendant at the time of his arrest was not brandished or displayed. The court reasoned as follows:

> Although at first blush the use of "appeared" in the commentary seems to imply that the weapon must be displayed, this inference is dispelled by the further clarifying words of "brandished, displayed *or possessed.*" The only way to give meaning to both "appeared" and "possessed" is to interpret "appeared" objectively for cases involving possession. Thus, if

---

[4]In *Shores,* this court applied the 1989 Sentencing Guidelines. In 1989, section 2B3.1(b)(2) provided:

> (A) If a firearm was discharged, increase by 5 levels; (B) if a dangerous weapon (including a firearm) was otherwise used, increase by 4 levels; (C) if a dangerous weapon (including a firearm) was brandished, displayed, or possessed, increase by 3 levels; or (D) if an express threat of death was made, increase by 2 levels.

In 1991, the section was amended to provide:

> (A) If a firearm was discharged, increase by 7 levels; (B) if a firearm was otherwise used, increase by 6 levels; (C) if a firearm was brandished, displayed, or possessed, increase by 5 levels; (D) if a dangerous weapon was otherwise used, increase by 4 levels; (E) if a dangerous weapon was brandished, displayed, or possessed, increase by 3 levels; or (F) if an express threat of death was made, increase by 2 levels.

The purpose of this amendment was to "increase[ ] the offense levels for use or possession of a firearm by 2 levels to better reflect the seriousness of such offenses." U.S.S.G.App. C, Amendment 365 (1991). Apart from the creation of a separate offense level for use or possession of a firearm, section 2B3.1(b)(2)(E) contains the same language as section 2B3.11(b)(2)(C).

a court finds that a particular toy gun is possessed by a defendant and "appears" to be a dangerous weapon in the sense of its potential if displayed, then the toy gun would satisfy application note 1(d) of § 1B1.1 and § 2B3.1, even though it was never actually displayed. To hold otherwise would be to read "possession" right out of the application note.

*Id.* at 1387-88 (emphasis in original).

Thus, under *Shores,* section 2B3.1(b)(2)(E) is applicable although the object *possessed* by the defendant is not dangerous, or a real weapon. The object need not be seen by the intended victim. *See United States v. Johnson,* 37 F.3d 1352, 1354 (9th Cir.1994) ("We are aware of no definition of "possess' that requires an object to be visible in order to be possessed."), *cert. denied,* 513 U.S. 1175, 115 S.Ct. 1155, 130 L.Ed.2d 1112 (1995) (citing *United States v. Pool,* 937 F.2d 1528, 1530-31 (10th Cir.1991)). The critical factor triggering the application of section 2B3.1(b)(2)(E) is whether the defendant intended that the object appear to be a dangerous weapon.

In *Shores,* the defendant had a toy gun in his possession at the time of his arrest. Here, there is no evidence regarding the nature of the object placed against the victim's side. This court has not previously been presented with a case in which the defendant pretends that he has a dangerous weapon in his possession by pressing a finger, or some other hard object, into the victim's body. In *United States v. Dixon,* 982 F.2d 116 (3d Cir.1992), *cert. denied,* 508 U.S. 921, 113 S.Ct. 2371, 124 L.Ed.2d 276 (1993), the district court held that a bank robber was subject to an increase in the base offense level under the sentencing guidelines for brandishing a dangerous weapon, although the record showed that she pretended to have a gun by wrapping a towel around her hand. *Id.* at 119.

On appeal, the appellant in *Dixon* argued that the offense level for brandishing, displaying, or possessing an object that appeared to be a dangerous weapon can be increased only if it "resemble[s] a weapon such as an unloaded gun, an inoperable gun, a toy gun, a pellet gun, or a road flare." *Id.* at 122. The Third Circuit rejected this argument and affirmed the sentence imposed by the district court. The court explained its holding in the following passage:

> Even though [the bank robber] did not possess an actual weapon underneath the concealing towel, her actions created a reasonable belief that she had a gun. Police responding to the crime or the victims of the crime could easily have retaliated violently because of the immediate threat they perceived. During the course of a robbery, people confronted with what they believe to be a dangerous weapon often find their perception

6

impaired because of fear and the threat of violence. That perceived fear and threat can itself trigger a violent and even deadly response.

*Id.* at 124.

We agree with the Third Circuit that the danger of a violent response that can flow from pretending to brandish, display, or possess a simulated weapon in perpetrating a robbery is just as real whether the object is a toy gun, or a concealed body part. Therefore, we hold that a 3 level enhancement is proper when a robber uses a finger or some other hard object to cause the victim to believe that it is a dangerous weapon. The increased punishment beyond the base offense level is justified by the threat of a violent or deadly confrontation that can be precipitated by simulating the possession of a dangerous weapon.

Citing *United States v. Woodard,* 24 F.3d 872 (6th Cir.1994), Vincent maintains that we are required to apply an objective standard in determining whether it appeared to the victim of a robbery that the defendant was armed with a deadly weapon. This circuit has not been called to determine whether an objective or subjective standard must be applied in determining whether the defendant appeared to possess a dangerous weapon. In addition, this court has not decided whether the appearance that the defendant was in possession of a dangerous weapon must be reviewed from the prospective of the victim, a bystander, or the defendant. In *Woodard,* the Sixth Circuit held that "the standard called for is not the subjective state of mind of the victim teller, but an objective standard." *Id.* at 874. In *Woodard,* the bank tellers testified that they believed that the object displayed by the defendant was a toy gun. *Id.* at 873.

The facts presented at trial in this matter are readily distinguishable from those set forth in the *Woodard* opinion. Here, the victim reasonably believed that the object pressed into her side was a dangerous weapon. Thus, we need not resolve the question whether we should apply an objective or a subjective standard because we are compelled to affirm under either standard. It is undisputed that Ms. Bownes believed that a deadly weapon was placed against her side. It is also clear that a person who places an object against his or her victim's body during the course of a robbery intends that the victim believe that resistance will result in injury or death from a dangerous weapon.

7

Accordingly, we hold that under the circumstances presented in this case, the district court did not err in increasing Vincent's sentence by three levels.

AFFIRMED.