**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Dexter Allen FRANKS, Defendant–Appellant.**

**No. 98–4543.**

United States Court of Appeals, Fourth Circuit.

Argued June 11, 1999.

Decided July 12, 1999.

---

**336**

**ARGUED:** Louis Carr Allen III, Federal Public Defender, Greensboro, North Carolina, for Appellant. Douglas Cannon, Assistant United States Attorney, Greensboro, North Carolina, for Appellee. **ON BRIEF:** William C. Ingram, First Assistant Federal Public Defender, Greensboro, North Carolina, for Appellant. Walter C. Holton, Jr., United States Attorney, Greensboro, North Carolina, for Appellee.

Before WIDENER, NIEMEYER, and KING, Circuit Judges.

Affirmed by published opinion. Judge KING wrote the opinion, in which Judge WIDENER and Judge NIEMEYER joined.

**OPINION**

KING, Circuit Judge:

Dexter Franks pleaded guilty to one count of bank robbery under 18 U.S.C. § 2113(a). At sentencing, the district court enhanced Franks's base offense level by two points because the court concluded that, during the course of the robbery, Franks had made a "threat of death" within the meaning of § 2B3.1(b)(2)(F) of the United States Sentencing Guidelines (U.S.S.G.). Franks now appeals his sentence, arguing that the district court erred in determining that Franks made a death threat when he handed the bank teller a note that read: "You don't have to give me all your cash. No dye packs. I have a gun. I have nothing to lose." Because we agree with the district court that Franks's note was sufficient to cause a reasonable person in the teller's position to fear for her life, we affirm.

I.

On January 16, 1998, Dexter Franks entered a branch of Central Carolina Bank & Trust Co. in Concord, North Carolina. Although Franks apparently was unarmed, he handed a teller the above-described note. While at the teller window, Franks displayed no weapon and made no gestures to suggest that he had a weapon. Franks took $1,904 from the teller, and the police arrested him later the same day. Police recovered some of the stolen money, but no gun was ever found.

Franks was indicted on February 23, 1998. After entering into a plea agreement, Franks pleaded guilty to a single count of bank robbery in the district court for the Middle District of North Carolina.

The court sentenced Franks to thirty-seven months' imprisonment, three years of supervised release, fines, and restitution. In calculating Franks's prison sentence, the district court enhanced the base offense level pursuant to U.S.S.G. § 2B3.1(b)(2)(F), having determined that the note Franks handed to the teller constituted a "threat of death" under that guideline.

Franks claims that the note does not constitute a death threat and appeals the enhancement of his sentence under § 2B3.1(b)(2)(F).

## II.

▬ · We review de novo the district court's legal interpretation of guidelines terminology and its application of the guidelines to a known set of facts. *United States v. Toler,* 901 F.2d 399, 402 (4th Cir.1990). Here, the facts are not in dispute. All agree that the only action that could support the enhancement of Franks's sentence for having made a threat of death under § 2B3.1(b)(2)(F) is the note Franks handed to the teller, which read: "You don't have to give me all your cash. No dye packs. I have a gun. I have nothing to lose." Consequently, the only question in this appeal is whether the text of that note, under the circumstances of the robbery, constituted a threat of death within the meaning of § 2B3.1(b)(2)(F).

### A.

Section 2B3.1(b)(2)(F) enhances the base offense level of a robbery sentence by two points if, during the robbery, the robber made a "threat of death." The guideline itself does not define "threat of death," but the commentary to § 2B3.1 illustrates this term through a series of examples:

"A threat of death," . . . may be in the form of an oral or written statement,

act, gesture, or combination thereof. Accordingly, the defendant does not have to state expressly his intent to kill the victim in order for the enhancement to apply. For example, an oral or written demand using words such as "Give me the money or I will kill you", "Give me the money or I will pull the pin on the grenade I have in my pocket", "Give me the money or I will shoot you", "Give me the money or else (where the defendant draws his hand across his throat in a slashing motion)", or "Give me the money or you are dead" would constitute a threat of death. The Court should consider that the intent of this provision is to provide an increased offense level for cases in which the offender(s) engaged in conduct that would instill in a reasonable person, who is a victim of the offense, a fear of death.

*U.S. Sentencing Guidelines Manual* § 2B3.1, app. n. 6.

We have applied § 2B3.1(b)(2)(F) in a case that is factually similar to this one. *See United States v. Murray,* 65 F.3d 1161 (4th Cir.1995). In *Murray,* the defendant made the following threat to a bank teller: "Give me three stacks of $20s. Don't give me a dye pack. I have a gun pointed at you." *Id.* at 1166. When the teller did not respond as quickly as the robber desired, the robber shouted, "You think I'm playing?" *Id.*

We concluded that the robber's statement to the teller "I have a gun pointed at you" was a threat to shoot the teller. *Id.* at 1167. Having reached this conclusion, we held that a threat to shoot a victim is a death threat under § 2B3.1(b)(2)(F):

[A] threat to shoot a firearm at a person during a robbery, created by any combination of statements, gestures, or actions that would put an ordinary victim in reasonable fear for his or her life, is an express threat of death under § 2B3.1(b)(2)(F),\* even though the per-

---

\* The version of § 2B3.1(b)(2)(F) in effect when *Murray* was decided required the robber to make an *"express* threat of death" before that

section's two-point enhancement would apply. U.S.S.G. § 2B3.1(b)(2)(F) (amended 1997) (emphasis added). As discussed in Sec-

son delivering the threat is not in possession of a firearm.

*Id.* In reaching this conclusion, we noted that the commentary to § 2B3.1(b)(2)(F) lists "Give me the money or I will shoot you" as a death threat sufficient to support a two-level enhancement. *Id.*

Given our ruling in *Murray,* then, our question becomes whether Franks's note constituted a threat to shoot the teller. We hold that it did. The combination of the statements "I have a gun" and "I have nothing to lose" can only be meant to indicate that Franks is both armed and prepared to use his gun. Because these statements were directed at a bank teller in order to induce her to surrender money, they must be understood as a threat to shoot the teller if she did not comply with Franks's request. We have no doubt that a reasonable person in the teller's shoes would have been in fear for her life upon reading Franks's note. As a result, we agree with the district court that Franks's statements constituted a threat to shoot the bank teller, thus were a threat of death under § 2B3.1(b)(2)(F). *See Murray,* 65 F.3d at 1166; *cf. United States v. Figueroa,* 105 F.3d 874 (3d Cir.1997) (statement "I have a gun. Give me all the money." satisfies § 2B3.1(b)(2)(F)).

### B.

Franks nevertheless contends that his note was not a death threat, relying principally on the Eleventh Circuit's decision in *United States v. Moore,* 6 F.3d 715 (11th Cir.1993). In *Moore,* the Eleventh Circuit concluded that a robber's statement to a bank teller "I have a gun and nothing to lose" was not a death threat under § 2B3.1(b)(2)(F). *Id.* at 721–22. In reaching this conclusion, the court relied on its prior decision in *United States v. Canzater,* in which it had held that the statement "I have a gun" was not an "express death threat" under the guidelines, because such

a statement was only an indirect threat, not the "express threat of death" that the guidelines then required. *Canzater,* 994 F.2d 773, 775 (11th Cir.1993) (per curiam).

Despite its close factual similarity to this case, we decline to follow *Moore* for two reasons. First, in *Murray,* we specifically rejected the Eleventh Circuit's reasoning in both *Moore* and *Canzater. Murray,* 65 F.3d at 1166 n. 3. More precisely, we concluded that, in those decisions, the Eleventh Circuit had improperly restricted the scope of § 2B3.1(b)(2)(F). *Id.* We also observed that, in holding that the relevant statements were not direct or specific enough to trigger § 2B3.1(b)(2)(F), the Eleventh Circuit had failed to give effect to the examples in the commentary to § 2B3.1, some of which contain only implied, indirect threats of death. *Id.*

Second, recent amendments to the guidelines—which post-date both *Moore* and *Murray,* but which apply here—eliminate the logical underpinnings of the *Moore* opinion. Before November 1, 1997, § 2B3.1(b)(2)(F) authorized an enhancement only when the robber had made an "*express* threat of death." U.S.S.G. § 2B3.1(b)(2)(F) (amended 1997) (emphasis added). Importantly, in both *Moore* and *Canzater,* the Eleventh Circuit relied heavily on the word "express" to conclude that the robbers' statements at issue were not sufficiently menacing to trigger § 2B3.1(b)(2)(F). *Moore,* 6 F.3d at 722 ("*Moore*'s note to the teller did not … state an express threat of death as interpreted by our circuit. …"); *Canzater,* 994 F.2d at 775 (although the statement "I have a gun" "may imply a threat to use the gun … that does not constitute an express death threat").

But effective November 1, 1997, the Sentencing Commission struck the word "express" from § 2B3.1(b)(2)(F). In so doing, the Commission specifically endorsed this circuit's approach in *Murray:*

> The amendment adopts the majority appellate view which holds that the en-

tion II.B, *infra,* the word "express" has since been deleted from this guideline, so that the

enhancement is triggered "if a threat of death was made." U.S.S.G. § 2B3.1(b)(2)(F).

hancement applies when the combination of the defendant's actions and words would instill in a reasonable person in the position of the immediate victim (*e.g.,* a bank teller) a greater amount of fear than necessary to commit the robbery. *See, e.g.,* ... *United States v. Murray* ....

*U.S. Sentencing Guidelines Manual,* App. C, Amendment 552 (1997). Because the now-deleted word "express" was the logical linchpin of the *Moore* decision—and because we have previously rejected the reasoning of that case on additional grounds—we decline to follow the Eleventh Circuit's conclusion in *Moore* that the words "I have a gun and nothing to lose" do not satisfy § 2B3.1(b)(2)(F). Instead, we hold that the contents of the note here are sufficient to constitute a threat of death under § 2B3.1(b)(2)(F).

### III.

The district court properly concluded that Franks's note to the bank teller constituted a threat of death sufficient to trigger the two-point enhancement of § 2B3.1(b)(2)(F). Consequently, Franks's sentence is affirmed.

*AFFIRMED.*