**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                          No. 99-4582

ROBERT JOSEPH SOUTHER,
Defendant-Appellant.

Appeal from the United States District Court
for the Western District of North Carolina, at Asheville.
Lacy H. Thornburg, District Judge.
(CR-98-314)

Argued: June 5, 2000

Decided: July 18, 2000

Before WIDENER and KING, Circuit Judges, and
Henry M. HERLONG, Jr., United States District Judge for the
District of South Carolina, sitting by designation.

_____

Affirmed by published opinion. Judge Herlong wrote the majority
opinion, in which Judge Widener joined. Judge King wrote a dissent-
ing opinion.

_____

**COUNSEL**

**ARGUED:** Philip James Roth, Jr., Asheville, North Carolina, for
Appellant. Brian Lee Whisler, Assistant United States Attorney,
OFFICE OF THE UNITED STATES ATTORNEY, Charlotte, North
Carolina, for Appellee. **ON BRIEF:** Mark T. Calloway, United States

Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Charlotte, North Carolina, for Appellee.

_____

**OPINION**

HERLONG, District Judge:

Robert Joseph Souther ("Souther") appeals the 108-month sentence he received after pleading guilty to two counts of bank robbery in violation of 18 U.S.C.A. § 2113(a) (West Supp. 2000). He claims that the district court improperly enhanced his base offense level by three levels for brandishing, displaying, or possessing a dangerous weapon pursuant to section 2B3.1(b)(2)(E) of the United States Sentencing Commission, Guidelines Manual ("Sentencing Guidelines"). Souther also claims that the district court failed to resolve a controverted fact in accordance with Rule 32 of the Federal Rules of Criminal Procedure and that the evidence did not support a finding that Souther possessed a dangerous weapon or an object that appeared to be a dangerous weapon. For the reasons below, we affirm Souther's sentence.

I.

Souther was indicted for the two counts of bank robbery on November 2, 1998. The first robbery occurred on October 9, 1998, at a branch of Clyde Savings Bank in Skyland, North Carolina. The second robbery occurred on October 13, 1998, at a branch of Centura Bank in Arden, North Carolina. Souther pled guilty to both counts, and he was sentenced on August 4, 1999, to a term of 108 months' imprisonment.

Souther's sentence was based upon a three-level enhancement pursuant to section 2B3.1(b)(2)(E) of the Sentencing Guidelines for "brandishing, displaying, or possessing" a "dangerous weapon" during the course of the robberies. U.S. Sentencing Guidelines Manual § 2B3.1(b)(2)(E) (1998). In both robberies, Souther handed the bank teller a note that stated: "I have a gun. Be quiet." Also, Souther kept his hands in his coat pockets during the majority of both robberies.

2

It is undisputed that Souther did not actually possess a weapon or any other inanimate object that might be mistaken for a weapon. It also is undisputed that Souther did not simulate the presence of a weapon with his hands, fingers, or other object, beyond the simple placement of his hands into his coat pockets.

II.

Souther first contends that the district court erred in its interpretation of section 2B3.1(b)(2)(E) of the Sentencing Guidelines. Because the issue "turns primarily on the legal interpretation of a guideline term," we review it de novo. See United States v. Jones, 31 F.3d 1304, 1315 (4th Cir. 1994).

Section 2B3.1(b)(2)(E) provides that the base offense level for robbery should be increased by three levels "if a dangerous weapon was brandished, displayed, or possessed." U.S.S.G.§ 2B3.1(b)(2)(E). This three-level enhancement applies when the robber brandishes, displays, or possesses an object that appears to be a dangerous weapon but in fact is not a dangerous weapon. See id. § 2B3.1 application note 2 ("When an object that appeared to be a dangerous weapon was brandished, displayed, or possessed, treat the object as a dangerous weapon for the purposes of subsection (b)(2)(E)."); see also id. § 1B1.1 application note 1(d) (defining "dangerous weapon" and providing that "[w]here an object that appeared to be a dangerous weapon was brandished, displayed, or possessed, treat the object as a dangerous weapon").

Because it is undisputed that Souther did not possess a dangerous weapon or any inanimate object that could be perceived as a dangerous weapon, the issue before us is whether a robber's hand* resting in his coat pocket may constitute the possession of "an object that appeared to be a dangerous weapon." Id.§ 2B3.1 application note 2. This issue is one of first impression in this circuit. We hold that Souther's concealed hand was an object that appeared-- by virtue of

_____

*For simplicity, we will refer to "hand" in the singular. Although both of Souther's hands remained in his pockets during the majority of the robberies, the court finds no relevant difference between a robber keeping one or two hands in his pockets.

3

his statement that he possessed a gun -- to be a dangerous weapon. Therefore, the enhancement was proper.

Our holding is supported by the text, commentary, and policies of section 2B3.1(b)(2)(E), as well as the uniform case law of our sister circuits.

A.

First, our holding is supported by the plain language of the applicable guideline and its commentary. See Stinson v. United States, 508 U.S. 36, 38 (1993) ("[C]ommentary in the Guidelines Manual that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline."). Section 2B3.1(b)(2)(E) allows a three-level enhancement "if a dangerous weapon was brandished, displayed, or possessed." U.S.S.G. § 2B3.1(b)(2)(E). Its commentary provides that an object that appears to be a dangerous weapon should be treated as though it were a dangerous weapon. See id. application note 2.

When Souther presented the teller with a note stating that he had a gun and placed his hand in his coat pocket, he created the appearance that he had a gun in his pocket regardless of whether he actually had a gun. The commentary instructs that such appearances should be treated as reality. Therefore, the plain language of the guideline and its commentary supports the enhancement.

B.

Because the commentary to the guidelines provides for appearances, our sister circuits uniformly have applied section 2B3.1(b)(2)(E)'s enhancement when the object at issue appeared to be a dangerous weapon. For example, the enhancement was held to be correctly applied when the object was a toy gun, see United States v. Woodard, 24 F.3d 872, 873-74 (6th Cir. 1994); United States v. Robinson, 20 F.3d 270, 277 (7th Cir. 1994); United States v. Shores, 966 F.2d 1383, 1387-88 (11th Cir. 1992) (per curiam), an unknown object under the defendant's t-shirt producing the outline of an apparent gun

4

handle, see United States v. Taylor, 960 F.2d 115, 116 (9th Cir. 1992), a concealed "finger or some other hard object [pressed into the victim's side] to cause the victim to believe that it [was] a dangerous weapon," United States v. Vincent, 121 F.3d 1451, 1455 (11th Cir. 1997), and a hand wrapped in a towel and waved about as though it were a gun, see United States v. Dixon, 982 F.2d 116, 121-24 (3d Cir. 1992). In addition, the object need not be displayed and need not be seen by the intended victim in order to support the enhancement. See, e.g., Vincent, 121 F.3d at 1455; United States v. Johnson, 37 F.3d 1352, 1354 (9th Cir. 1994); Shores, 966 F.2d at 1387-88.

Moreover, the case law indicates that it is sufficient for a body part such as a hand to serve as an "object" and thereby satisfy section 2B3.1(b)(2)(E). See Vincent, 121 F.3d at 1455 (holding that a concealed body part is a sufficient "object"); Dixon, 982 F.2d at 121-24 (holding that a hand wrapped in a towel is a sufficient "object"). The Dixon court elaborated on how a hand may be considered an "object" for purposes of the enhancement:

> [The robber's] hand is an object. Concealed by the towel and pointed around the bank, it fooled the bank tellers into thinking she had a dangerous weapon. The object that was her hand, together with the object covering it, the towel, appeared to them to be a weapon. Though she may not have displayed the hand that gave the appearance of a firearm when draped by the towel, she certainly possessed both her hand and the towel and from the victims' testimony seems to have brandished them to good effect.

Dixon, 982 F.2d at 122 (emphasis added). The Vincent court cited Dixon in determining that a concealed body part may serve as the object. See Vincent, 121 F.3d at 1455.

We agree with the Third and Eleventh Circuits that a concealed hand may serve as an object that appears to be a dangerous weapon. In Vincent, the concealed hand appeared to be a dangerous weapon because it was pressed into the victim's side. In Dixon, the concealed hand appeared to be a dangerous weapon because it was draped with a towel. In the instant case, the concealed hand appeared to be a dangerous weapon because Souther presented a note that stated he had a

5

gun. Cf. United States v. Buckley, 192 F.3d 708, 709 (7th Cir. 1999) (remarking upon the correctness of the district court's determination that a briefcase appeared to be a dangerous weapon under section 2B3.1(b)(2)(E) because of a note representing that it was a bomb).

The instant case presents a twist, however, in that the hand was not given the visual appearance of a gun (e.g., Souther did not extend his finger inside his pocket in order to make his hand look like a gun). Neither did Souther wave his concealed hand around or press it into someone's side. Nevertheless, we decline to restrict the meaning of the word "appear" to visual or sensorial appearances. Souther's hand appeared to be a dangerous weapon because it was concealed in his coat pocket and because he told the teller via the note that he possessed a gun. The note achieved the same result as if Souther had pressed his finger into the victim's side (as in Vincent), draped his hand with a towel (as in Dixon), or extended a finger in order to create the outline of a gun barrel beneath the fabric of his coat pockets; namely, the note made Souther's concealed hand appear to be a dangerous weapon to whomever was presented the note.

Also, Souther would have us distinguish cases like Vincent and Dixon because they involved the "brandishing" of an object that appeared to be a dangerous weapon. A weapon is "brandished" if it is "pointed or waved about, or displayed in a threatening manner." U.S.S.G. § 1B1.1 application note 1(c). The Sentencing Guidelines provide no definition for "possession" or"display," although at least two courts have applied, in the context of section 2B3.1, the standard definition for "possess" as "`"to have in one's actual and physical control; to have the exclusive detention and control of."'" United States v. Weadon, 145 F.3d 158, 162 (3d Cir. 1998) (quoting Johnson, 37 F.3d at 1354 (quoting Black's Law Dictionary 1046 (5th ed. 1979))).

We decline to limit Vincent and Dixon 's principles to the brandishing of an object that appears to be a weapon because section 2B3.1(b)(2)(E) applies equally to "brandishing, displaying, or possessing." U.S.S.G. § 2B3.1(b)(2)(E) (emphasis added). Thus, we see no reason to interpret the guideline differently for a robber who brandishes an object that appears to be a dangerous weapon than for a robber who possesses an object that appears to be a dangerous weapon. Souther created the appearance that he possessed a dangerous

6

weapon, which is as sufficient to satisfy the guideline as if he created the appearance that he was brandishing a dangerous weapon. Otherwise, we would read the possession element right out of the guideline. Cf. Shores, 966 F.2d at 1387-88 ("Thus, if a court finds that a particular toy gun is possessed by a defendant and`appears' to be a dangerous weapon in the sense of its potential if displayed, then the toy gun would satisfy application note 1(d) of § 1B1.1 and § 2B3.1 [of the 1989 Sentencing Guidelines], even though it was never actually displayed. To hold otherwise would be to read`possession' right out of the application note.").

C.

Third, our decision is supported by the underlying policies for treating an object that appears to be a dangerous weapon on the same footing as a dangerous weapon. The Sixth Circuit has explained these policies in the context of the object being a toy gun:

> "`A robber who carries a toy gun during the commission of a bank robbery creates some of the same risks as those created by one who carries an unloaded or inoperable genuine gun. First, the robber subjects victims to greater apprehension. Second, the robber requires law enforcement agencies to formulate a more deliberate, and less efficient response in light of the need to counter the apparent direct and immediate threat to human life. Third, the robber creates a likelihood that the reasonable response of police and guards will include the use of deadly force. The increased chance of an armed response creates a greater risk to the physical security of victims, bystanders, and even the perpetrators. Therefore the greater harm that a robber creates by deciding to carry a toy gun is similar to the harm that he creates by deciding to carry an unloaded gun.'"

Woodard, 24 F.3d at 874 (quoting United States v. Medved, 905 F.2d 935, 940 (6th Cir. 1990) (quoting United States v. Martinez- Jimenez, 864 F.2d 664, 666-67 (9th Cir. 1989))). The Third Circuit has recognized the same policies when one of several bank robbers did not use a toy gun, but rather simulated the existence of a gun by covering her hand with a towel:

7

We are unable to see any material difference between the present situation and that presented by either the toy gun cases or the case involving the bulge in the waistband. It has been uniformly held that a robber who carries a toy gun or an unloaded or inoperable real gun during the commission of a bank robbery creates an enhanced risk of violence. A robber who creates the appearance of possession of a gun, i.e. by placing a towel over his or her hand and pretending to possess a gun, creates similar risks as well.[The robber] effectively utilized her hand and a towel for the same purpose as the defendants in those cases; namely, in order to create the appearance of a gun and so frighten the bank employees into acceding to the robbers' criminal acts.

The risk that is created when a robber displays a toy gun is similar to the risk created when carrying an unloaded gun.

. . . .

Even though [the robber] did not possess an actual weapon underneath the concealing towel, her actions created a reasonable belief that she had a gun. Police responding to the crime or the victims of the crime could easily have retaliated violently because of the immediate threat they perceived. During the course of a robbery, people confronted with what they believe to be a dangerous weapon often find their perception impaired because of fear and the threat of violence. That perceived fear and threat can itself trigger a violent and even deadly response.

Dixon, 982 F.2d at 123-24.

The Eleventh Circuit has cited similar policies:

We agree with the Third Circuit that the danger of a violent response that can flow from pretending to brandish, display, or possess a simulated weapon in perpetrating a robbery is just as real whether the object is a toy gun, or a concealed body part. Therefore, we hold that a 3 level

8

enhancement is proper when a robber uses a finger or some other hard object to cause the victim to believe that it is a dangerous weapon.

Vincent, 121 F.3d at 1455.

The underlying rationale of the enhancement, as expressed by these other circuits, applies to the instant case as much as to the above-cited cases. The risks created by Souther when he stated that he had a gun and kept his hand concealed in his pocket are the same as the risks created by a robber who possesses a toy gun or who simulates a gun with a concealed body part. The note and concealed hand created the appearance of the existence of a dangerous weapon, and both the apprehension of the victim and the risk of violence were increased. Therefore, the enhancement should apply.

D.

We note that the day following oral argument on this case, the Eleventh Circuit decided a similar issue and determined that the three-level enhancement was properly imposed under section 2B3.1(b)(2)(E) when a bank robber's "hand simulated possession of what appeared to be a dangerous weapon [and when] the victim teller perceived [the robber] to possess a dangerous weapon." United States v. Bates, No. 99-2060, 2000 WL 725337, at *2 (11th Cir. June 6, 2000). In Bates, the robber commanded the bank teller to fill a yellow bag with money. See id. at *1. He then threatened to "hurt" the teller and reached his right hand into the waistband of his pants, "clearly implying and simulating the presence of a weapon." Id.

Like Souther, the robber in Bates contended that there was no "object" in his waistband and therefore that the enhancement was inapplicable. The Eleventh Circuit, however, rejected the argument that the enhancement required "the presence of an actual weapon or an object that can be perceived as a weapon." Id. at *2. Instead, it was enough that the robber "simulated" the existence of a dangerous weapon and that the teller subjectively "perceived" that there was a dangerous weapon. Id.

9

We need not reach the issue of whether "simulation" is sufficient in the absence of an object because we conclude that Souther's concealed hand served as an object. In addition, as for the Eleventh Circuit's reliance on the subjective perception of the teller, we decline to determine whether the appearance of the object as a dangerous weapon must be determined from a subjective or objective standard. The teller confronted by Souther reasonably believed that Souther possessed a dangerous weapon, and so we would affirm under either standard. Cf. Vincent, 121 F.3d at 1456 (declining to resolve the same issue because "the victim reasonably believed that the object pressed into her side was a dangerous weapon").

III.

Souther also raises the conditional argument that if the district court imposed the three-level enhancement on the basis that Souther actually possessed a dangerous weapon (as opposed to an object that appeared to be a dangerous weapon), then the district court violated Rule 32(c) of the Federal Rules of Criminal Procedure. Rule 32(c) requires the sentencing court to make a finding on any controverted matter or to determine that no finding is necessary. Fed. R. Crim. P. 32(c)(1). A district court's application of Rule 32 is reviewed under the clearly erroneous standard. See United States v. McManus, 23 F.3d 878, 882 (4th Cir. 1994).

Souther concedes that the district court did not make an explicit finding that Souther actually possessed a dangerous weapon. Thus, Souther notes that we must imply any such finding. There is no indication in the record that the enhancement was based upon an implied finding by the district court that Souther actually possessed a dangerous weapon. Rather, the enhancement was based on the district court's finding that Souther possessed an object that appeared to be a dangerous weapon. Because the underlying assumption of Souther's claim is not true, this claim is without merit.

IV.

Finally, Souther claims that the evidence in the record was insufficient for the trial court to conclude that Souther possessed an object that appeared to be a dangerous weapon. Because we conclude that

10

Souther's hand may constitute an object that appears to be a dangerous weapon, there was no error.

V.

The presentation to the teller of a note stating that Souther possessed a gun, coupled with Souther placing his hand in his coat pocket, was sufficient to trigger the enhancement. Under these circumstances, Souther's concealed hand was an "object" that by virtue of the note "appeared to be a dangerous weapon." U.S.S.G. § 2B3.1 application note 2. Therefore, the district court did not err, and we affirm Souther's sentence.

AFFIRMED

KING, Circuit Judge, dissenting:

In the course of carrying out two bank robberies, Robert Souther handed bank tellers a note that read: "I have a gun. Be quiet." Souther kept both of his hands in his coat pockets during these robberies, and it is undisputed that he did not actually possess a gun during either robbery. Based on these facts, the Sentencing Guidelines mandate a two-point increase in his base offense level for making a threat of death; however, these circumstances do not justify the imposition of a three-point increase for possessing a dangerous weapon. I would vacate Souther's sentence and remand for imposition of the two-point increase.

I.

The United States Sentencing Guidelines incorporates a detailed scheme relating to the specific offense characteristics of a robbery. See United States Sentencing Commission, Guidelines Manual, § 2B3.1 (Nov. 1998). For example, the most egregious conduct -- discharge of a firearm during a robbery -- warrants a seven-point increase, while other uses of a firearm during a robbery result in a six-point increase. At the lower end of the scale, a robber receives a three-point increase if a "dangerous weapon" is "brandished, displayed, or possessed" and garners a two-point increase "if a threat of death was made."

11

A note representing that a robber has a gun -- like the note utilized by Souther -- plainly constitutes a threat of death, and Souther therefore deserved a two-point increase in his base offense level. See USSG § 2B3.1(b)(2)(F) (requiring two-point increase "if a threat of death was made"). The commentary to USSG § 2B3.1(b)(2)(F) illustrates this point through several examples, and each of the examples -- including: "Give me the money or I will pull the pin on the grenade I have in my pocket," "Give me the money or I will shoot you," and "Give me the money or else (where the defendant draws his hand across his throat in a slashing motion)" -- constitutes a "threat of death" for purposes of this guideline. See USSG § 2B3.1, comment. (n.6). Souther's notes to the tellers in this appeal did nothing more or less than the Guideline's examples; the note indicated possession of a weapon with a threat that the weapon would be used on the reader.

Indeed, we recently rendered a decision precisely on point. See United States v. Franks, 183 F.3d 335, 338 (4th Cir. 1999). There, a bank robber, who was apparently unarmed, handed a note to a teller stating: "You don't have to give me all your cash. No dye packs. I have a gun. I have nothing to lose." Id. at 336. On those facts, we rightly concluded that "a reasonable person in the teller's shoes would have been in fear for her life upon reading" the note. Therefore, we affirmed a two-point increase. Id. at 338.

Similarly, Souther's notes representing possession of a gun plainly sought to put the fear of death into the tellers. Thus, those notes were sufficient to cause a reasonable teller to fear for her life, and a two-point increase is entirely warranted.

II.

On the other hand, the majority relies upon USSG § 2B3.1(b)(2)(E), under which a person receives a three-point increase "if a dangerous weapon was brandished, displayed, or possessed." The commentary to this provision explains that "[w]hen an object that appeared to be a dangerous weapon was brandished, displayed, or possessed, [the court should] treat the object as a dangerous weapon for the purposes of subsection (b)(2)(E)." See USSG § 2B3.1, comment. (n.2). Necessarily, the Government and the majority have relied on the outer bounds of USSG § 2B3.1(b)(2)(E), arguing that

12

Souther's hands -- when placed inside his coat pockets -- made it appear as though Souther possessed a dangerous weapon.

I have concluded that the scheme encompassed in USSG§ 2B3.1 requires more. For example, if a robber possesses a toy gun, see United States v. Robinson, 20 F.3d 270, 277 (7th Cir. 1994); presses a hard object into the side of a teller, United States v. Woods, 127 F.3d 990, 993 (11th Cir. 1997); or waves a towel-draped hand at the tellers, United States v. Dixon, 982 F.2d 116, 124 (3d Cir. 1992); then the specific characteristics of the defendant's robbery justify a three-point enhancement. I have no quarrel with the majority's conclusion that a hand can constitute an "object" for purposes of USSG § 2B3.1(b)(2)(E). However, merely resting one's hands in one's pockets is not enough; rather, the hand must objectively appear to be a dangerous weapon before the three-point increase is warranted.

Dixon, supra, illustrates the point. There, the robber had covered her hand with a towel and then waved the towel-covered hand around the bank at customers. 982 F.2d at 122. In those circumstances, the robber had made her hand appear to be a gun, and when the appearance of a gun was coupled with the menacing gestures, it was objectively reasonable to conclude that the robber's hand appeared to be a firearm. Id. In this case, by contrast, both of Souther's hands sat passively in his pockets, he made no indication that his coat pockets contained a gun, and he made no menacing or threatening gestures whatsoever.

Put simply, when a bank robber passes a note indicating possession of a gun, the Government will always be able to point to something on the robber that might be subjectively perceived to be a gun. Indeed, if nothing on a robber could appear to be a gun, then a note indicating possession of a gun would be dismissed as an absurdity. Thus, the majority's rationale actually rises and falls on Souther's note alone, in which he represented that he had a gun. See ante at 3-4 ("We hold that Souther's concealed hand was an object that appeared -- by virtue of his statement that he possessed a gun -- to be a dangerous weapon.") (emphasis added). However, in my view, a note representing possession of a gun is properly punished under the threat provision, USSG § 2B3.1(b)(2)(F), requiring the two-point increase. Under the rule adopted in this appeal, any note representing posses-

13

sion of a gun will now be sufficient to justify the three-point increase under USSG § 2B3.1(b)(2)(E). This is not what the Guidelines anticipated.

The majority's reliance upon the "policies" underlying USSG § 2B3.1 also is a telling red herring. First, it is telling that the majority must rely upon the "purpose" of this Guideline because the majority thereby illustrates that the plain language of the Guideline does not mandate a three-point increase. In that vein, to the extent that the scheme encompassed in the relevant provisions is ambiguous, the principle of lenity, which applies to the Sentencing Guidelines, would mandate a two-point, not three-point, increase. See United States v. Cutler, 36 F.3d 406, 408 (4th Cir. 1994) ("[T]he rule [of lenity] may be applied in the context of the Sentencing Guidelines."). Reliance on the "purpose" of this Guideline is also misleading and irrelevant: There is no doubt that risks inhere when a bank robber threatens a teller by alluding to possession of a firearm, and for that good reason, USSG § 2B3.1 sanctions this conduct. According to the Guidelines, however, there is a difference between a threat of death and the possession of an object that appears to be a dangerous weapon. Respect for the Guidelines mandates the imposition of a more severe three-point sanction only in response to the latter -- possession of an object that appears to be a dangerous weapon.

For these reasons, I respectfully dissent.

14