# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued December 7, 2010          Decided February 18, 2011

No. 10-3042

UNITED STATES OF AMERICA,
APPELLEE

v.

BRIAN DAVIS,
APPELLANT

Appeal from the United States District Court
for the District of Columbia
(No. 1:07-cr-00304)

*John A. Briley Jr.*, appointed by the court, argued the cause for the appellant.

*L. Jackson Thomas II*, Assistant United States Attorney, argued the cause for the appellee. *Ronald C. Machen Jr.*, United States Attorney, *Elizabeth Trosman*, *John P. Mannarino* and *Angela G. Schmidt*, Assistant United States Attorneys were on brief. *Roy W. McLeese III*, Assistant United States Attorney, entered an appearance.

Before: HENDERSON and GRIFFITH, *Circuit Judges*, and WILLIAMS, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* HENDERSON.

KAREN LECRAFT HENDERSON, *Circuit Judge*: Appellant Brian Davis (Davis) pleaded guilty to two counts of bank robbery in violation of 18 U.S.C. § 2113(a). He appeals his sentence, which was increased because the district court found that he had brandished a dangerous weapon within the meaning of section 2B3.1(b)(2)(E) of the U.S. Sentencing Guidelines (U.S.S.G. or Guidelines), based on testimony that during one of the robberies, he put his hand into his backpack and told the bank teller to "just give me the money." On appeal, Davis argues that his conduct did not amount to brandishing or possessing a dangerous weapon. For the reasons set forth below, we affirm.

I.

At about 5 p.m. on September 10, 2007 Brian Davis walked into a bank in Northwest Washington, D.C. and handed the teller a note that read, "I'm making a 2500-dollar withdrawal. No alarms and no dye pack."[1] Sentencing Tr. at 5–6, *United States v. Davis*, No. 07-304 (D.D.C. Mar. 9, 2010) (Tr. 3/9). The teller began to count out the money but she worked slowly, deliberately taking her time as she tried to figure out a way to alert her coworkers. She miscounted the bills and had to start over. Davis told her, "just give me the money." Sentencing Tr. at 28, *United States v. Davis*, No. 07-304 (D.D.C. Apr. 7, 2010) (Tr. 4/7). Davis had placed a backpack on the ledge of the teller window and, at that moment, he inserted his hand into the front pocket up to his wrist. According to the teller's testimony, Davis gestured by "moving his hand in the backpack" that made it seem "as if he were going to pull something out," although he

---

[1]The background facts are taken from Davis's sentencing hearings held on March 9, 2010 and April 7, 2010.

did not completely withdraw his hand. Tr. 3/9 at 7, 12. The teller testified that Davis looked "nervous" and she interpreted his gesture to mean "[t]hat if I didn't hurry up, he would pull out a weapon and people would get hurt."

For his role in the events of September 10, 2007 and in a later bank robbery, Davis pleaded guilty to two counts of bank robbery in violation of 18 U.S.C. § 2113(a). The district court held sentencing hearings on March 9, 2010, at which time the Government offered the bank teller's testimony, and on April 7, 2010. The district court sentenced Davis to two concurrent terms of sixty-five months' imprisonment and thirty-six months' supervised release, as well as $4550 in restitution and $200 in special assessments. At sentencing, the district court imposed a three-level enhancement to Davis's base offense level for brandishing a dangerous weapon pursuant to section 2B3.1(b)(2)(E) of the Guidelines, resulting in an offense level of twenty-four and a sentencing range of sixty-three to seventy-eight months.[2] Absent the enhancement, Davis's base offense level would have been twenty-one, yielding a sentencing range of forty-six to fifty-seven months. Davis filed a timely notice of appeal.

## II.

We review the district court's sentencing decision under our familiar three-part scheme: " 'Purely legal questions are reviewed *de novo*; factual findings are to be affirmed unless

---

[2]In addition to the enhancement under section 2B3.1(b)(2)(E), Davis received a two-level enhancement because the property of a financial institution was taken, another two-level enhancement because of the later bank robbery and a three-level downward adjustment for acceptance of responsibility.

clearly erroneous; and we are to give due deference to the district court's application of the guidelines to facts.' " *United States v. Day*, 524 F.3d 1361, 1367 (D.C. Cir. 2008) (quoting *United States v. Goodwin*, 317 F.3d 293, 297 (D.C. Cir. 2003)) (internal quotation marks omitted), *cert. denied*, 129 S. Ct. 295 (2008).

Section 2B3.1(b)(2)(E) provides for an enhancement "if a dangerous weapon was brandished or possessed" during a robbery. The Guidelines Commentary[3] explains that "an object shall be considered to be a dangerous weapon" if "the defendant used the object in a manner that created the impression that the object was an instrument capable of inflicting death or serious bodily injury (*e.g.*, a defendant wrapped a hand in a towel during a bank robbery to create the appearance of a gun)."[4] U.S.S.G. § 2B3.1 cmt. n.2; *see also id.* § 1B1.1 cmt. n.1(D). An object is "brandished" not only if "all or part of the weapon was displayed" but also if "the presence of the weapon was otherwise made known to another person, in order to intimidate that person, regardless of whether the weapon was directly

---

[3]We consider the Commentary " 'authoritative' unless it violates the Constitution or a federal statute, or 'is inconsistent with, or a plainly erroneous reading of, that guideline.' " *United States v. Johnson*, 605 F.3d 82, 83 (D.C. Cir. 2010) (quoting *Stinson v. United States*, 508 U.S. 36, 38 (1993)).

[4]The definition of "dangerous weapon" as used in section 2B3.1(b)(2)(E) originates in the Commentary to section 1B1.1. *Compare* U.S.S.G. § 2B3.1 cmt. n.2 *with id.* § 1B1.1 cmt. n.1(D). The two definitions are meant to be interpreted the same way. *See id.* § 2B3.1 cmt. n.2 (defining "dangerous weapon" in manner "[c]onsistent with Application Note 1(D)(ii) of § 1B1.1").

visible to that person." *Id.* § 1B1.1 cmt. n.1(C).

In this case, the Guidelines and accompanying Commentary make it clear that a defendant need not in fact possess a weapon to receive an enhancement pursuant to section 2B3.1(b)(2)(E). Mimicking the possession of a gun, bomb, knife or other weapon can "create[] the impression" that a defendant is wielding "an instrument capable of inflicting death or serious bodily injury" and thus be considered brandishing or possessing a dangerous weapon under section 2B3.1(b)(2)(E). U.S.S.G. § 2B3.1 cmt. n.2. Other circuits have recognized that section 2B3.1(b)(2)(E) applies alike to armed robbers and robbers who merely pretend to be armed. *See, e.g.*, *United States v. Hoffa*, 587 F.3d 610, 615–16 (3d Cir. 2009) (defendant told bank teller, "If I pull it out, I'll use it" while holding hand in pocket); *United States v. Farrow*, 277 F.3d 1260, 1261–62, 1268 (10th Cir. 2002) (defendant told bank teller "[d]on't make a scene or I'll do something reckless" while holding hand in pocket); *United States v. Hart*, 226 F.3d 602, 603, 608–09 (7th Cir. 2000) (defendant carried package wrapped in brown paper bag and gave bank teller note stating "I have a bomb in this box"); *United States v. Souther*, 221 F.3d 626, 627–28 (4th Cir. 2000) (defendant gave bank teller note stating "I have a gun" while holding hand in pocket), *cert. denied*, 531 U.S. 1099 (2001); *United States v. Bates*, 213 F.3d 1336, 1337–39 (11th Cir. 2000) (defendant told bank teller "don't make me hurt you" and reached into waist band), *cert. denied*, 531 U.S. 1056 (2000); *United States v. Woodard*, 24 F.3d 872, 872–74 (6th Cir. 1994) (defendant pointed toy silver revolver at bank teller); *United States v. Taylor*, 960 F.2d 115, 116 (9th Cir. 1992) (defendant gave teller note stating "I have a gun in the waistband of my pants" and pulled up shirt to reveal outline of gun handle beneath undershirt). Indeed, the current version of the

Commentary all but codifies the holding in *United States v. Dixon*, in which the Third Circuit upheld an enhancement under section 2B3.1(b)(2)(E) where one of several bank robbers draped a towel over her hand and "pointed menacingly" at the bank employees.[5] 982 F.2d 116, 119, 121–24 (3d Cir. 1992), *cert. denied*, 508 U.S. 921 (1993) *and* 508 U.S. 927 (1993); *see* U.S.S.G. App. C amend. 601 (2001) (amendment to definition of "dangerous weapon" in Commentary was "in accord with the decision[] in . . . *United States v. Dixon*"). As *Dixon* explained, "the Commission equates the image of a 'dangerous weapon' with its reality for purposes of sentence enhancement" because both instill fear and have the potential to "trigger a violent and even deadly response" by police, security guards or victims of the crime. *Dixon*, 982 F.2d at 121, 123–24.[6]

Davis relies on the portion of the Guidelines' definition of "brandished" that states, "although the dangerous weapon does not have to be directly visible, *the weapon must be present*."

---

[5]At the time *Dixon* was decided, the Commentary to section 2B3.1 provided: "When an object that appeared to be a dangerous weapon was brandished, displayed, or possessed, treat the object as a dangerous weapon . . . ." U.S.S.G. § 2B3.1 cmt. n.2 (1990); *see United States v. Dixon*, 982 F.2d 116, 121 (3d Cir. 1992), *cert. denied*, 508 U.S. 921 (1993) *and* 508 U.S. 927 (1993).

[6]Davis attempts to distinguish *Dixon* by pointing out that the robber there admitted that she acted "with the intent of creating th[e] belief" that she was holding a gun. 982 F.2d at 121. But section 2B3.1(b)(2)(E) does not require that a defendant admit his intent; the court need only find that the defendant "created the impression" that he was armed with a dangerous weapon, U.S.S.G. § 2B3.1 cmt. n.2, an objective inquiry that depends on the "circumstances surrounding the crime," *Dixon*, 982 F.2d at 124.

U.S.S.G. § 1B1.1 cmt. n.1(C) (emphasis added). The Sentencing Commission, however, added the phrase "the weapon must be present" in the same amendment that incorporated *Dixon*'s holding into the definition of "dangerous weapon." U.S.S.G. App. C amend. 601. Notwithstanding the language, the Commission did not intend the phrase to require the actual presence of a weapon, which reading would contradict its express endorsement of *Dixon*. *See Dixon*, 982 F.2d at 124 (upholding enhancement for brandishing dangerous weapon notwithstanding robber had no weapon); U.S.S.G. App. C amend. 601. Rather, the requirement that a "weapon must be present" should be understood in relation to the definition of "dangerous weapon" that follows the definition of "brandished" in the Commentary to section 1B1.1. There, as under section 3B1.2, the definition of "dangerous weapon" includes any object "the defendant used . . . in a manner that created the impression that the object was" an "instrument capable of inflicting death or serious bodily injury." U.S.S.G. § 1B1.1 cmt. n.1(D). Even a defendant's hand may count as such an "object" when concealed in a manner that creates the appearance of a dangerous weapon. *Dixon*, 982 F.2d at 122 (robber's "hand is an object" used to "fool[] the bank tellers into thinking she had a dangerous weapon"); *see also Farrow*, 277 F.3d at 1268 ("[A] concealed hand may be an object which potentially triggers the three-level enhancement under § 2B3.1(b)(2)(E)."); *Souther*, 221 F.3d at 628 ("[Defendant's] concealed hand was an object that appeared . . . to be a dangerous weapon."); *United States v. Vincent*, 121 F.3d 1451, 1455 (11th Cir. 1997) ("[A] 3 level enhancement is proper when a robber uses a finger or some other hard object to cause the victim to believe that it is a dangerous weapon."). The requirement that such a weapon "be present" thus refers to both genuine and simulated weapons and underscores the importance of the defendant's *apparent* capacity

to do violence. *See United States v. LaFortune*, 192 F.3d 157, 161 (1st Cir. 1999) (to "brandish" means "to 'advise' those concerned that [one] possesses the general ability to do violence, and that violence is imminently and immediately available"), *cert. denied*, 528 U.S. 1129 (2000).

Davis also disputes whether his conduct can be considered "brandish[ing]" in light of our decision in *United States v. Yelverton*, 197 F.3d 531 (D.C. Cir. 1999), *cert. denied*, 528 U.S. 1195 (2000). In *Yelverton* we upheld the application of a different sentencing guideline providing for an enhancement if "a dangerous weapon was *used*" during a kidnapping where the kidnappers showed the victim's mother a photograph depicting the victim with a gun pointed at his head. 197 F.3d at 533; U.S.S.G. § 2A4.1(b)(3) (emphasis added). *Yelverton*—where there *was* a dangerous weapon pointed at a victim and where the court applied a different sentencing guideline—is plainly inapposite. Davis's citation to *Yelverton* for the proposition that mere possession of a weapon is not sufficient to support an enhancement is likewise irrelevant. In any event, we recognized in *Yelverton* that the term "used" is different from "brandished" inasmuch as it refers to conduct that involves "*more than* brandishing, displaying, or possessing a . . . dangerous weapon." 197 F.3d at 533 (emphasis added) (quoting U.S.S.G. § 1B1.1 cmt. n.1(g) (1995)).

Davis further contends that the district court erred by relying on the teller's "subjective state of mind," which reliance, his counsel asserted at oral argument, posed the danger that "any robbery could be converted into an armed robbery" based on the sensitivities of a particular victim. Oral Argument Recording at 6:22, *United States v. Davis*, No. 10-3042 (D.C. Cir. Dec. 7, 2010). The record shows, however, that the district court applied an *objective* standard in evaluating whether Davis created the

impression that his backpack contained a dangerous weapon—a standard under which "the victim's perception of the object may be relevant to th[e] inquiry" but "is never controlling of the outcome." *Hart*, 226 F.3d at 607. After hearing the teller's testimony, the district judge stated, "I tried to put myself in the position of that reasonable person in the bank, would I have thought, under those circumstances, that the person had a dangerous weapon? . . . [T]he answer is yes, I would have." Tr. 4/7 at 5. Indeed, after Davis claimed in allocution that he was just "unzipping the bag to put the money in," the district judge told Davis,

> You know there's a standard that I have to look at, and that's a reasonable person's standard. Would a reasonable person under those circumstances think that you were just unzipping the bag to receive money or that you were doing something in an effort to communicate a threat to her?

*Id.* at 27–28.

Nor do we find fault in the way the district court assessed the evidence. "Whether a reasonable person, under the circumstances of the robbery, would have believed" that the defendant brandished or possessed a dangerous weapon "is a factual inquiry by the district court to be reviewed under a clear error standard." *Hart*, 226 F.3d at 608. As the district court recognized, Davis's gesture did not occur in isolation but in the context of an ongoing bank robbery. Davis set the tone by handing the teller a note written in stark imperative terms—"No alarms and no dye pack"—and his gesture was accompanied by a "nervous" expression and the command "just give me the money," both occurring at the point that the teller appeared to be taking too much time to count out the cash. Tr. 3/9 at 5–6, 15;

Tr. 4/7 at 28. After considering the teller's testimony—including her answers to several questions posed by the court itself, *see, e.g.*, Tr. 3/9 at 13 ("Explain that gesture again."); *id.* at 14 ("And was his hand in that backpack or tell me where his hand was. . . . [W]hat portion of that hand could you see?"); *id.* at 15 ("What was his demeanor like at the time he was going for that gesture . . . ?"); *id.* at 20 ("What was going through your mind at the time he put his hand in that bag, though?")—the court found that a reasonable person would have believed Davis was armed based on "the totality of everything," including "not just the movement of the hand" but "the expression as well, coupled with the note." Tr. 4/7 at 5. We find no clear error in the district court's finding.

For the foregoing reasons, we affirm the district court's sentencing judgment.

*So ordered.*