[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
OCTOBER 6, 2005
THOMAS K. KAHN
CLERK

_____

No. 05-10936
Non-Argument Calendar

_____

D. C. Docket No. 04-60179-CR-KAM

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

DEVIN HICKS,
a.k.a. Bread,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(October 6, 2005)

Before CARNES, MARCUS and FAY, Circuit Judges.

PER CURIAM:

Devin Hicks appeals through counsel his 108-month sentence for distribution and possession with intent to distribute five grams or more of cocaine base, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B). Hicks argues on appeal that his sentence at the bottom of his advisory guideline range, which the district court imposed after considering, at least implicitly, all of the factors enumerated in 18 U.S.C. § 3553(a), was unreasonable, in light of United States v. Booker, 543 U.S. ___, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005). For the reasons set forth more fully below, we affirm Hicks's sentence.

Hicks plead guilty, pursuant to a written plea agreement, to the above-referenced offense. During Hicks's plea colloquy, he agreed that, as part of an investigation by the Drug Enforcement Administration's ("DEA's") Mobil Enforcement Team ("MET Team") of narcotics trafficking in the northwest area of Hallandale Beach, Florida, members of the MET Team, acting as undercover agents, purchased cocaine base from him. Hicks also conceded that these buys, which occurred on four separate occasions over a two-month period, involved a total of 57.5 grams of cocaine base.

Prior to sentencing, a probation officer prepared a presentence investigation report ("PSI"), recommending that Hicks's base offense level be set at 32, pursuant to U.S.S.G. § 2D1.1(c)(4) (setting offense level applicable for offenses involving at

least 50 grams, but less than 150 grams, of cocaine base).  The probation officer

also recommended a three-level reduction, pursuant to U.S.S.G. § 3E1.1, for

acceptance of responsibility.  With an adjusted offense level of 29, and a criminal

history category of III, Hicks's resulting guideline range was 108 to 135 months'

imprisonment.  In making these calculations, the probation officer explained that

no role adjustment was warranted, pursuant to U.S.S.G. § 3B1.2, because,

"[a]lthough Hicks was the primary negotiator and in charge of setting the purchase

price of the crack cocaine, he [did] not appear to have been in a leadership role,

which would warrant an aggravating role enhancement."  In addition, the probation

officer noted that the district court might decide to depart upward, pursuant to

U.S.S.G. § 4A1.3, because Hicks's criminal history category of III did not

adequately reflect his extensive juvenile criminal history.[1]

Hicks filed objections to the PSI, arguing that a § 3B1.2(b) minor-role

adjustment was warranted because (1) he "was at the bottom of the [drug

distribution] chain as a street[-]level seller"; (2) his "localized" offense conduct

was not sophisticated or complex; and (3) he was not a leader, manager, or

---

[1] The PSI reflects that Hicks's juvenile history, which began at age 11, included the state offenses of (1) possession with intent to sell cocaine base, (2) burglary, (3) theft, (4) battery, (5) grand theft auto, (6) possession of cannabis, and (7) resisting without violence.  Moreover, Hicks committed the instant offense while he was on probation for the state offenses of (1) carrying a concealed firearm, (2) resisting without violence, and (3) discharging a firearm at a school.

organizer.  Hicks also argued that, due to the fact that he only was age 18 when he committed the instant offense, the court should depart downward based on his "extreme vulnerability in prison."

Alternatively, Hicks contended that, in light of Booker, the court should apply the factors enumerated in § 3553(a) to the mitigating facts in his case and conclude that his mandatory minimum statutory sentence of 5 years' imprisonment, instead of his guideline range of 108 to 135 months' imprisonment, was reasonable and sufficient.  In support of this last argument, Hicks contended that (1) the offense involved simple and unsophisticated drug sales; (2) his guideline range was "artificially inflated" because he was not arrested until after an undercover agent made multiple drug purchases from Hicks; (3) despite Hicks's "troubled history," he was intelligent and had family support; and (4) a reduced sentence would provide him with the "needed educational or vocational training, medical care, or other correctional treatment in the most effective manner."

On February 4, 2005, at sentencing, Hicks renewed his § 3B1.2(b) objection and motion for a downward departure based on his "extreme vulnerability."  Hicks also reargued that the court should impose his mandatory minimum statutory sentence, instead of sentencing him within his advisory guideline range.  In addition to reasserting the reasons outlined in his objections to the PSI, Hicks

asserted in support of this last argument that (1) he had never been in prison; (2) the drug sales at issue had not involved large sums of money, weapons, threats, or injuries; (3) his pre-sentence incarceration had "opened his eyes" to "the reality of the crime"; (4) his mandatory minimum statutory sentence would reflect adequately the seriousness of the offense; and (5) educational or vocational treatment would have the most impact at his age.[2]

The government responded that a sentence below Hicks's guideline range was not warranted because (1) Hicks had been dealing drugs since he was age 11; (2) Hicks had dropped out of high school in the ninth grade; (3) Hicks had an extensive criminal history as a juvenile; (4) out of the 30 MET cases the prosecutor personally had handled, Hicks had sold the highest quantity of drugs, and for the largest sums of cash; and (5) Hicks's minimum mandatory statutory sentence would not promote respect for the law because Hicks had failed to take advantage of previously granted leniency and had repeatedly committed crimes and violated his probation. Hicks replied that, although he was not disputing either the facts, or

---

[2] Hicks also produced as mitigating evidence a letter from his parents, in which they stated that (1) their neighborhood gave "the false perception that those who break the laws appear to prosper far greater than those [] who work hard to make ends meet"; (2) Hicks was a "child playing in a very grown man's game"; (3) Hicks appeared to act, at least in part, out of his desire to provide for his new child; (4) Hicks was "heavily addicted" to marijuana when he committed the instant offense conduct; (5) he had intended to enter a "boot camp"; and (6) he was remorseful.

his criminal history, the court should not base his sentence primarily on misconduct that he had committed during his youth.

At the conclusion of the parties' arguments, the district court denied Hicks's request for a minor-role adjustment, finding that Hicks, if anything, was more culpable than the only other identifiable member of the drug-trafficking operation. The court similarly denied Hicks's motion for a downward departure based on "extreme vulnerability," explaining:

> [T]here is nothing in this record [that] distinguishes Mr. Hicks, as a 19-, soon to be 20-year-old, from any other person of similar age or characteristics. He is not physically or mentally deficient or vulnerable in any way that would, in my mind, justify him [being treated] differently [sic] than any other person of a similar age. And, if I were to grant him a downward departure on that basis alone, his age, I don't know how I could distinguish him from any other 20-year-old who comes before me. And I believe I need more evidence in the record to justify vulnerability than his mere age. So I am going to deny that request.

The court, thus, adopted the PSI's findings and calculated Hicks's advisory guideline range as 108 to 135 months' imprisonment. After giving Hicks the opportunity to allocute, the court also denied the government's request for an upward departure.

The court then sentenced Hicks to 108 months' imprisonment, 4 years' supervised release, and a $100 special assessment fee. In doing so, the court offered the following explanation:

Now, I just want to make clear . . . that simply imposing a sentence does not mean that the individual has no worth. The guidelines are intended to give guidance to district judges as to what may be an appropriate sentence under the circumstances in order to attempt to assure, insure, that similar people who are convicted of similar crimes with similar backgrounds under similar facts are treated similarly throughout the country . . . [and not] just because of the culture or nature or the manner in which the courts in the legal system operate, just because of the peculiarities or preferences of an individual judge. They're intended to try and treat people equally.

So, again, that doesn't mean that we're bound by the guidelines. And that's what the Booker [C]ourt made clear: that they're advisory only, but certainly they need to be considered seriously and, in my judgment, should not be ignored without significant justification, and, taking everything into consideration in this case, I believe that a guideline sentence is appropriate.

So, after a consideration of the statements of all the parties and a review of the [PSI], the [c]ourt shall impose a sentence within the guideline range. The [c]ourt finds, however, that a sentence at the low end of the guideline range is sufficient to deter future criminal conduct. Furthermore, it is the finding of the [c]ourt that [Hicks] is not able to pay a fine. Accordingly, no fine shall be imposed.

Hicks raised no objections to the court's pronouncement of, and explanation of, his sentence, other than reasserting his previous objections.

Hicks argues on appeal that the district court erred in imposing his sentence because it misunderstood the "the proper range of its discretion" in imposing a post-Booker sentence. Hicks asserts in support that the court (1) violated Fed.R.Crim.P. 32(i)(3)(b) by leaving unresolved controverted matter, (2) erroneously determined that it could not sentence him outside of his guideline

7

range "without significant justification," and (3) failed to explain or articulate its findings as to § 3353(a)'s sentencing factors. Hicks concludes that, because of these legal errors, he received an unreasonable sentence.[3]

As a preliminary matter, to the extent Hicks is arguing that the court violated Rule 32(i)(3)(B), by leaving unresolved disputed issues, this rule provides:

> At sentencing, the court must—for any disputed portion of the presentence report or other converted matter—rule on the dispute or determine that a ruling is unnecessary either because the matter will not affect sentencing, or because the court will not consider the matter in sentencing.

Fed.R.Crim.P. 32(i)(3)(B). In interpreting a former, but similar, version of Rule 32,[4] we determined that "[t]o demonstrate a technical transgression of [former Rule 32], all that is necessary is that an allegation of a specific factual error in the [PSI]

---

[3] Hicks has waived by not arguing on appeal that the court erred in calculating his advisory guideline range and in not departing based on his "extreme vulnerability." See United States v. Levy, 416 F.3d 1273, 1275 (11th Cir. 2005) (holding that an argument not raised in an appellant's opening brief is deemed waived). Moreover, we recently determined in United States v. Winingear, No. 05-11198 (11th Cir. Aug. 30, 2005), that, post-Booker, we still have no jurisdiction to review a decision of a district court not to depart downward, so long as the district court did not incorrectly believe that it lacked the authority to apply a departure. See id., manuscript op. at 7-9.

[4] This former version of Rule 32 provided:

> If the comments of the defendant and the defendant's counsel or testimony or other information by them allege any factual inaccuracy in the [PSI] or the summary of the report or part thereof, the court shall, as to each matter controverted, make (i) a finding as to the allegation, or (ii) a determination that no such finding is necessary because the matter controverted will not be taken into account in sentencing.

See Fed.R.Crim.P. 32(c)(3)(D) (1992).

was before the [] court and that the [] judge did not make either of the alternative findings." United States v. Boatner, 966 F.2d 1575, 1581 (11th Cir. 1992).

We, however, have clarified that, at least with respect to the former version of Rule 32, the rule is applicable only to objections to a probation officer's factual findings, instead of his or her legal opinions or conclusions. See United States v. Vincent, 121 F.3d 1451, 1453 (11th Cir. 1997). In Vincent, we determined that the defendant, in challenging the legal conclusion that a sentence enhancement was applicable, had failed to demonstrate that his PSI contained a controverted factual allegation. See id. Similarly, in arguing a Rule 32(i)(3)(B) violation, Hicks has failed to identify unresolved factual allegations. Indeed, at sentencing, Hicks conceded that he was not disputing either the facts in his PSI, or its calculation of his criminal history. Moreover, as discussed below, the record, at least implicitly, shows that the court considered all of § 3553(a)'s sentencing factors and the mitigating facts Hicks offered as they related to these factors. Thus, Hicks argument as it relates to Rule 32(i)(3)(B) is without merit.

To the extent Hicks also is contesting what standard of review is applicable on review, and whether the district court properly relied on his guideline range, the Supreme Court, prior to Hicks's sentencing hearing, issued its decision in Booker, holding that the mandatory nature of the federal guidelines rendered them

incompatible with the Sixth Amendment's guarantee to the right to a jury trial.

Booker, 543 U.S. at ___,125 S.Ct. at 749-51.[5]  In a second and separate majority

opinion, the Booker Court explained that, to best preserve Congress's intent in

enacting the Sentencing Reform Act of 1984, the appropriate remedy was to

"excise" two specific sections—18 U.S.C. § 3553(b)(1) (requiring a sentence

within the guideline range, absent a departure) and 18 U.S.C. § 3742(e)

(establishing standards of review on appeal, including de novo review of

departures from the applicable guideline range)—thereby effectively rendering the

Sentencing Guidelines advisory only.  Id. at ___, 125 S.Ct. at 764.  Thus, the

Booker Court concluded that a defendant's guideline range is now advisory; it no

longer dictates the final sentencing result but, instead, is an important sentencing

factor that the sentencing court is to consider, along with the factors contained in

18 U.S.C. § 3553(a).[6]  Id. at ___, 125 S.Ct. at 764-65.  Moreover, the Booker Court

_____

[5]  The Supreme Court in Booker explicitly reaffirmed its rationale in Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), that "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt."  See Booker, 543 U.S. at ___, 125 S.Ct. at 756.

[6]  The relevant sentencing factors enumerated in § 3553(a) include: "(1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed–(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range established for . . . (A) the applicable category of offense

10

concluded that courts of appeals now must review sentences for unreasonableness. Id. at ___, 125 S.Ct. at 767.

In applying Booker, we have determined that a district court's interpretation of the federal guidelines still is subject to de novo review, while its factual findings must be accepted unless clearly erroneous. United States v. Jordi, 418 F.3d 1212, 1214 (11th Cir. 2005); see also United States v. Crawford, 407 F.3d 1174, 1178 (11th Cir. 2005) ("[n]othing in Booker suggests that a reasonableness standard should govern review of the interpretation and application as advisory of the [g]uidelines by a district court"). However, after a court has calculated a defendant's guideline range, it "may impose a more severe or more lenient sentence," which we review only for reasonableness. Crawford, 407 F.3d at 1179. Moreover, although the federal guidelines now are only advisory, courts "remain[] obliged to 'consult' and 'take into account' the [g]uidelines in sentencing," and the guidelines "remain an essential consideration in the imposition of federal sentences, albeit along with the factors in § 3553(a)." Id. at 1178.

Applying this analysis to the instant case, the district court properly noted that, although it was required to consider Hicks's guideline range of 108 to 135

_____

committed by the applicable category of defendant as set forth in the guidelines . . .; (5) any pertinent policy statement []; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense." See 18 U.S.C. § 3553(a)(1)-(7).

11

months' imprisonment, and although it did not believe that a defendant's guideline range should be ignored "without significant justification," it understood that it was not bound by this range. In explaining that it had found that Hicks, if anything, was more culpable than his codefendant, and that Hicks's age, alone, was not sufficient to conclude that he would be more vulnerable than other defendants if he was sentenced to a lengthy prison sentence, the court demonstrated that it had considered "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." See 18 U.S.C. § 3553(a)(6). Moreover, in discussing that a sentence of 108 months' imprisonment would be sufficient to deter future criminal conduct, and that Hicks was unable to pay a fine, the court showed that it had considered the need for a sentence "to afford adequate deterrence to criminal conduct," see 18 U.S.C. § 3553(a)(2)(B); and the kinds of sentences available, see 18 U.S.C. § 3553(a)(3).

Additionally, in explaining that it had considered the arguments of the parties and the contents of Hicks's PSI, the court, at least implicitly, demonstrated that it had considered, along with Hicks's guideline range, the other sentencing factors in § 3553(a). Indeed, applying these other factors, although Hicks argued that (1) he was "at the bottom of [drug distribution] chain," (2) the offense involve "simple and unsophisticated drug sales," and (3) his conduct was "localized,"

12

Hicks conceded that the offense conduct involved four separate drug sales, during which he sold a total of 57.5 grams of cocaine base. See 18 U.S.C. § 3553(a)(1) ("the nature and circumstances of the offense").

Hicks's PSI also reflects that, although he only was age 18 when he committed the instant offense, he had a lengthy juvenile criminal history and he had not taken advantage of past opportunities to rehabilitate himself. See 18 U.S.C. § 3553(a)(1) ("the history and characteristics of the defendant"); 18 U.S.C. § 3553(a)(2)(D) ("the need for the sentence imposed to provide the defendant with needed [treatment]"). Thus, Hicks has failed to show that the court did not consider § 3553(a)'s sentencing factors, or that his 108-month sentence, which was at the low end of his guideline range and was less than half of his statutory maximum sentence, was unreasonable. See 21 U.S.C. § 841(b)(1)(B) (setting maximum statutory sentence for offenses involving five grams or more of cocaine base as 40 years); see also Winingear, No. 05-11198, manuscript op. at 9-11 (concluding that a determination of how much deference is owed a sentence within a defendant's advisory guideline range was unnecessary because the defendant's two-year sentence—which was one-tenth of his statutory maximum sentence, was the result of his defrauding 21 people of a total of $19,600, was committed after previous convictions and while the defendant still was serving a sentence for

13

another offense, and followed the defendant's violating his bond and threatening to murder the arresting officers as he fled from them—clearly was reasonable).

Finally, to the extent Hicks is challenging the court's failure to explicitly discuss during his sentencing hearing each of the factors enumerated in § 3553(a), he failed to raise this claim in the district court. Indeed, when the court asked Hicks whether he had any objections to the court's pronouncement of sentence, Hicks replied that he had none, other than reasserting his previous objections. Thus, our review only is for plain error. See United States v. Rodriguez, 398 F.3d 1291, 1297-98 (11th Cir.) (reviewing a newly raised Booker challenge for plain error), cert. denied, 125 S.Ct. 2935 (2005). "An appellate court may not correct an error the defendant failed to raise in the district court unless there is: '(1) error, (2) that is plain, and (3) that affects substantial rights.'" Id. (quotation omitted). "'If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings.'" Id. (quotation omitted).

An error cannot meet the "plain" requirement of the plain error rule if it is not "clear under current law." United States v. Aguillard, 217 F.3d 1319, 1321 (11th Cir. 2000) (quotation omitted). "[W]here neither the Supreme Court nor this Court has ever resolved an issue, and other circuits are split on it, there can be no

14

plain error in regard to that issue." Id.; see also United States v. Gerrow, 232 F.3d 831, 835 (11th Cir. 2000) (concluding that the Court need not determine under plain-error review, in the absence of precedent from the Supreme Court or this Court, whether 18 U.S.C. § 3583(b)((2) provided the maximum term of supervised release for a defendant sentenced under 21 U.S.C. § 841(b)(1)(C)). Because Hicks has failed to show that either the Supreme Court or this Court had determined post-Booker to what extent courts are required to explain sentences, any error was not "plain." See Aguillard, 217 F.3d at 1321.[7]

Accordingly, we conclude that the district court (1) properly considered both Hicks's advisory guideline range and the other sentencing factors enumerated in § 3553(a), and (2) did not plainly err in pronouncing Hicks's sentence. We, therefore, affirm Hicks's 108-month sentence.

**AFFIRMED.**

---

[7] In concluding in United States v. Robles, 408 F.3d 1324 (11th Cir. 2005), that a district court's sentencing of a defendant under a mandatory-guidelines system was harmless error, we commented, albeit as dicta, as follows:

> Even if Robles was sentenced post-Booker and we were reviewing for reasonableness, we would not expect the district court in every case to conduct an accounting of every § 3553(a) factor. . . and expound upon how each factor played a role in its sentencing decision. Certainly, the more insight a district court can provide us with, the better it will be for appellate review, especially when the court sentences outside of the guidelines; however, when a district court sentences within the guidelines, we could not expect a court to do more than was done in this case.

See Robles, 408 F.3d at 1328.